UNITED STATES, Appellee

v

WILSON MASON, JR., Private, U. S. Marine Corps, Appellant

21 USCMA 389, 45 CMR 163

No. 24,393

May 19, 1972

*Lieutenant Charles W. Corddry, III,* JAGC, USNR, argued the cause for Appellant, Accused.

*Captain John P. Proctor,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion

DUNCAN, Judge:

Consideration of the granted issues calls for our examination of two most significant questions: (1) The right of an accused to a speedy trial, and (2) the right of an accused in confinement to consult with counsel after request. The appellant urges that his lawful right to each was denied and that all charges should have been dismissed.

Mason was charged with attempted murder, being off limits, resisting apprehension, assaulting a military policeman with a dangerous weapon, wrongfully discharging a firearm, and an additional charge of assault with a dangerous weapon, in violation of Articles 80, 92, 95, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 892, 895, 928, and 934.

On April 26, 1970, two military policemen searching for an escaped prisoner encountered the accused and Private Thomas at an off limits house of prostitution known as "'Fat Mamasan's House.'" Entering the door the policemen informed Mason and Thomas that they were under apprehension for being "off limits." Mason turned around and according to one of the policemen, Corporal Rieck, "stuck the .45 in my face and said, 'There is a round in the chamber'." The policeman retreated from the room; then Rieck heard a .45 caliber round fired in the room. The other military policeman (Mullican) stated he again was about to attempt entry into the room and the appellant swung at him with the .45. After he told Mason to drop the weapon, a round was fired from Mason's weapon which lightly creased Mullican's helmet.

The appellant was then taken in custody and transported to military police headquarters.

We next set forth the chronology of subsequent occurrences regarding the accused together with the Government's explanation for the manner in which the case was processed.

Sergeant Rodgers of the Criminal Investigations Detachment testified regarding his interview of the appellant on April 28, 1970:

"Q [Trial counsel]. Sergeant RODGERS, do you remember the day, and testify of your present memory without relying on the content of any document seen, as to what you advised the accused he was suspected of?

"A. The only thing I can specifically remember talking to the suspect about has to be on the attempted murder, and possible use of dangerous drugs."

Appellate Exhibit II, signed by the appellant, is entitled "SUSPECT'S RIGHTS ACKNOWLEDGEMENT/ STATEMENT." The writing under the heading OFFENSE(S) lists "attempted murder; assault upon a military policeman while in the performance of his duties; resisting apprehension; wrongful use of dangerous drugs." This Exhibit also sets forth certain rights of a suspect and a waiver of those rights, including a waiver of the right to presence of counsel during that interview. Mason then made a statement in writing (Appellate Exhibit III).

Forty-nine days after his confinement, charges were preferred on June 14, 1970. Appellant was informed of the nature of the charges on June 16, 1970.

The Government admits that the evidence explains that the criminal investigator had assembled the statements necessary for his report within a week of the incident. Thereafter, Sergeant Rodgers took the .45 caliber weapon and shell casings found at the scene of the incident to the Army

Crime Laboratory at Long Binh for a determination as to whether the shells "came from that particular weapon." Mason had already admitted the weapon fired and claims that it fired accidentally.

Rodgers suspecting that the accused had used dangerous drugs on the date of the altercation, sent a sample of the accused's blood to Japan for analysis for the presence of drugs. Mason previously acknowledged he had ingested drugs.

By May 30, 1970, the investigators were in possession of the results of the tests; thereafter, eleven days were consumed in the finalization and assembly of the report. On June 10, 1970, the command received the report, charges were drafted, and counsel for the accused was appointed. Defense counsel was not informed of his appointment until the day before the initial Article 32 investigation.

The initial delay from the first Article 32 investigation ordered on June 18, 1970, and conducted on June 27, 1970, until the last Article 32 investigation, which was concluded on August 3, 1970, is attributed, in part, to the improvident appointment of one of the accused's company officers as the Article 32 investigating officer. On July 1, 1970, the second Article 32 investigation conducted by another officer was completed. By July 7, 1970, appellant's commanding officer had received the investigation and on that date forwarded the charges and investigation to the convening authority recommending trial by general court-martial. On July 23, 1970, defense counsel requested a speedy trial.

Next, the Government decided that an additional charge of an offense against Corporal Rieck was in order and learned that Rieck was available in the United States. Because of the additional charge, the Article 32 investigation was reopened and concluded on August 3, 1970. On August 12, 1970, the convening authority referred the charges to trial by general court-martial. The trial commenced on September 4, 1970. At that time the appellant had been in confinement 131 days.

While in confinement, Mason on May 2, 12, 17, and 23, 1970, properly informed confinement personnel that he wanted to consult with a lawyer and to be informed of the charges against him. He did not see a lawyer until June 27, 1970, the date of the first Article 32 investigation.

Mason was found guilty of attempted murder, violation of a lawful order by being in an off limits area, assault on a military policeman, wrongful and willful discharge of a firearm such as to endanger human life, and assault with a dangerous weapon. He was sentenced to a dishonorable discharge, confinement at hard labor for five years, and total forfeitures. The United States Navy Court of Military Review approved only a finding of guilty of assault with a dangerous weapon, the violation of a lawful general order, and the finding of guilty of the Additional Charge of assault with a dangerous weapon. That court reassessed the sentence to confinement at hard labor for three years, total forfeitures, and a dishonorable discharge.

I

Article 10, Code, supra, 10 USC § 810, provides that when an accused is confined "prior to trial, *immediate* steps shall be taken to inform him of the *specific* wrong of which he is accused and to *try him or to dismiss the charges and release him.*" (Emphasis supplied.)

Article 33, Code, supra, 10 USC § 833, requires that charges, together with the investigation and allied papers, shall be forwarded within eight days after the accused is ordered confined, if practicable. If not practicable, a written report explaining the reasons for the delay shall be made.

Rather than eight days, charges in the instant case were first forwarded more than two months after the ac-

cused's confinement. It is noted that the requirements of Article 33 are patently mandatory and only require interpretation with respect to the meaning of the term "practicable." We need look no further than to its common meaning. Webster's Third New International Dictionary, 1963 Unabridged edition, at page 1780, defines the word as "capable of being put into practice, done, or accomplished."

The burden is on the Government to justify the delay in forwarding the charges. See United States v Smith, 17 USCMA 55, 58, 37 CMR 319 (1967). We believe that burden to show the incapability of complying with the eight-day provision has not been met. United States v Weisenmuller, 17 USCMA 636, 38 CMR 434 (1968), and cases cited therein. The evidence under review is that on April 28, 1970, the Government had knowledge of the incident as related by two military policemen present at the incident together with the accused's statement. Study of the charges presented and the facts available to the commanding officer on April 28, 1970, are sufficient to eliminate a tolling of the eight-day requirement based upon impracticability.

Directing further attention to Article 33, Code, supra, we are aware that it requires that when charges are forwarded they are to be accompanied by "the investigation and allied papers." The appellee contends that the delay, while certain scientific test results were awaited, was justifiable. Presumably, the argument raised a notch would urge that until the test results were available to be included as a part of the report of investigation to be forwarded as required by Article 33, it would not be practicable to forward the charges.

Implementation of such a concept would be the bane of Article 33. Our obligation in codal interpretation is to identify and implement the legislative intent; here our task is easy. Obviously the requirement was designed by the Congress to require expedi-

tious processing of the cases of those confined. See United States v Hounshell, 7 USCMA 3, 7, 8, 21 CMR 129 (1956). So viewed, if a commanding officer has sufficient basis upon which to conclude a confined accused has committed an offense and that there is sufficient documentation for that conclusion, his duty is then to forward the charges with that amount of documentation without delay. This requirement in no fashion prohibits further investigation for matters material to the justiciable solution of the case. We do not reach our result herein on the sole basis of a failure to observe the requirements of Article 33. We comment on it in the case before us since it so clearly proscribes the time limits the makers of the law believed to be fitting for the procedural progress of the case of an accused in confinement.

Article 10, Code, supra, and the Sixth Amendment to the Constitution of the United States render unreasonable delay unlawful and unconstitutional, respectively. Article 10 requires that immediate steps be taken to try an accused under restraint. The Sixth Amendment affords an accused the right to a speedy trial.

Mere haste, on the other hand, has never been the object of our law, but as is well stated in Smith v United States, 360 US 1, 10, 3 L Ed 2d 1041, 1048, 79 S Ct 991 (1959):

". . . [T]he essential ingredient is orderly expedition and not mere speed."

See also United States v Przybycien, 19 USCMA 120, 41 CMR 120 (1969).

We reaffirm the often-stated position taken by this Court which requires that the propriety of delay must be evaluated with a look to the total circumstances shown of record. However, in addition to the delay already discussed hereinabove, the Government has failed sufficiently to explain other delays which we regard as unreasonable.

The assignment and removal of one of the accused's company officers ap-

pears to have been a mistake made without design to delay. However, in this instance, such a mistake is a matter of neglect which cannot be countenanced. United States v Parish, 17 USCMA 411, 38 CMR 209 (1968); cf. United States v Ervin, 20 USCMA 97, 42 CMR 289 (1970).

The Government cannot be permitted to offer the absence of Corporal Rieck as an explanation for delay. He was available for the giving of information on the date of the incident. In fact, Rieck made a statement the following day. Obviously the information that he had been assaulted and would be needed for trial was as readily available on the day of the incident as on the latter date when the investigating officer decided to attempt to locate Corporal Rieck. Under these facts it is grossly unreasonable to dilute an accused's right to the expedient process of his case.

We do not reach the question of whether or not these delays caused a prejudicial effect upon the accused's defense. The constitutional right to a speedy trial is not to be evaluated solely with a view to the state of the defense evidence that is or may be adduced at trial. In United States v Marion, 404 US 307, 320, 30 L Ed 2d 468, 478, 92 S Ct 455, 463 (1971), Mr. Justice White, stated in part:

"It is apparent also that very little support for appellees' position emerges from a consideration of the purposes of the Sixth Amendment's speedy trial provision, a guarantee which this Court has termed 'an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of the accused to defend himself.' United States v Ewell, 383 US 116, 120, 15 L Ed 2d 627, 86 S Ct 773 (1966); see also Klopfer v North Carolina, 386 US 213, 221–226, 18 L Ed 2d 1, 6–10, 87 S Ct 988 (1967); Dickey v Florida, 398 US 30, 37–38, 26 L Ed 2d 26, 31, 32, 90 S Ct 1564 (1970). Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. *But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.* To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. *Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.* These considerations were substantial underpinnings for the decision in Klopfer v North Carolina, supra; see also Smith v Hooey, 393 US 374, 377–378, 21 L Ed 2d 607, 610, 611, 89 S Ct 575 (1969)." [Emphasis supplied.]

In the case before us, the Government did not proceed as required by Article 10, Code, supra, and the accused was not given a speedy trial as required by the Constitution of the United States.

The conviction is reversed and the charges are ordered dismissed.

## II

Mindful of the fact that having arrived at the conclusions set forth hereinabove, we are not required to decide the question arising from appellant's frustrated attempts to consult with counsel while uncharged in confinement. I am constrained to make the following comments and conclusions. Furthermore, I wish to make it clear that what follows is my opinion, not that of the other members of the Court.

As the appellee contends, I agree that there is no specific provision of the Manual for Courts-Martial, United States, 1969 (Revised edition), or the Uniform Code of Military Justice, for such consultation.

Article 27, Code, supra, 10 USC § 827, provides that the convening authority shall, *for each general court-martial,* appoint a defense counsel who is both qualified and certified. It is tempting to conclude that that Article encompasses and provides a solution to the problem of an uncharged accused who seeks the advice of counsel. I do not believe that it is available for that purpose since no duty arises until there is a "general court-martial." An uncharged accused is not within *that* provision until such general court-martial charges are referred. United States v Moore, 4 USCMA 482, 486, 16 CMR 56 (1954).

However, on a number of occasions this Court has plainly stated the appropriateness of allowing consultation with counsel. In United States v Przybycien, supra, page 122, footnote 2 states:

> ". . . A Department of Defense instruction on the operation of confinement facilities prohibits confinement in excess of thirty days, without approval of the officer exercising general court-martial jurisdiction over the command which ordered investigation of the alleged offense. Department of Defense Instruction, 1325.4, October 7, 1968, paragraph III.A.2.b. That provision, however, does not insure the accused will be apprised of his legal rights and be in a position to prepare his defense. *It is appropriate, therefore, to give a prisoner in confinement for more than a brief period specific advice as to his right to consult an attorney and right to prepare for trial.* Cf. Bitter v United States, 389 US 15, 19 L Ed 2d 15, 88 S Ct 6 (1967)." [Emphasis supplied.]

In United States v Gunnels, 8 USCMA 130, 134, 23 CMR 354 (1957), Chief Judge Quinn wrote:

> ". . . A suspect has no right to the appointment of military counsel, but he most assuredly has a right to consult with a lawyer of his own choice or with the Staff Judge Advocate. Cf. Rule 5(b), Federal Rules of Criminal Procedure."

See also United States v Williams, 18 USCMA 518, 40 CMR 230 (1969); United States v Rose, 8 USCMA 441, 24 CMR 251 (1957).

Appellant submits that in the case under review the victim of the attempted murder alleged under Charge I, Mullican, testified at trial that he would not have recognized appellant if he had not seen him the day before the Article 32 investigation, and that he realized appellant was his assailant only after seeing him at the hearing. Prejudice to the defense is suggested to have been produced since the appellant was held in confinement for sixty days prior to the Article 32 investigation and given no opportunity to consult with counsel, and that his defense counsel was totally unprepared for the critical confrontation between appellant and Mullican at the Article 32 investigation. Without denying that an earlier appointment of counsel may have given rise to another identification procedure more favorable to appellant, from a reading of the entire record I cannot say that the refusal to allow the appellant consultation with counsel prejudiced the actual defense of the case to such an extent that a reversal on that basis is indicated.

Has appellant's right to the assistance of counsel as guaranteed by the Sixth Amendment to the Constitution been abrogated? Again my review of the total record impresses me with the fact that the accused was not without legal representation at critical periods where such representation is constitutionally required as aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process. Johnson v New Jersey, 348 US 719, 728, 729, 16 L Ed 2d 882, 86 S Ct 1772 (1966). See also Adams v Illinois, — US —, 31 L Ed 2d 202, 92 S Ct 916 (1972); United States v Wade, 388 US 218, 18 L Ed 2d 1149, 87 S Ct 1926 (1967); Gilbert v California, 388 US 263, 18 L Ed 2d 1178, 87 S Ct 1951 (1967); Stovall v Denno, 388 US 293, 18 L Ed 2d 1199, 87 S Ct 1967 (1967); Coleman v Alabama, 399 US 1, 26 L Ed 2d 387, 90 S Ct 1999 (1970).

Furthermore, the record of the instant case is unmarred by the admission in evidence of an admission made by appellant in violation of his right to the presence of counsel accorded him pursuant to our decision in United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967). See also Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966).

In Crooker v California, 357 US 433, 2 L Ed 2d 1448, 78 S Ct 1287 (1958), the Supreme Court rejected petitioner's position which in essence was that every state denial of a request to contact counsel be an infringement of the constitutional right without regard to the circumstances of the case.[1] See also Cicenia v Lagay, 357 US 504, 2 L Ed 2d 1523, 78 S Ct 1297 (1958). Although the precedential value of *Crooker* and *Cicenia* is somewhat questionable as regards the admissibility of confessions or admissions since the decisions in Escobedo v Illinois, 378 US 478, 12 L Ed 2d 977, 84 S Ct 1758 (1964), and Miranda v Arizona, supra, research does not reveal decisions holding a constitutional affront in refusing the right to consult counsel in the absence of demonstrated prejudice in situations where there is neither interrogation nor where the stage of the proceeding is deemed noncritical.

In McNabb v United States, 318 US 332, 87 L Ed 819, 63 S Ct 608 (1943), it was held that the failure promptly to take an arrested person before a committing authority as required by a statute rendered inadmissible in evidence a confession made by such person upon interrogation by investigating officers before he was taken before the committing authority. Mr. Justice Frankfurter states, at pages 340, 341:

"In the view we take of the case, however, it becomes unnecessary to reach the Constitutional issue pressed upon us. For, while the power of this Court to undo convictions in state courts is limited to the enforcement of those 'fundamental principles of liberty and justice,' Herbert v Louisiana, 272 US 312, 316, 71 L Ed 270, 272, 47 S Ct 103, 104, 48 ALR 1102, which are secured by the Fourteenth Amendment, the scope of our reviewing power over convictions brought here from the Federal courts is not confined to ascertainment of Constitutional validity. *Judicial supervision of the administration of criminal justice in the Federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence.* Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force. Moreover, review by this Court of state action expressing its notion of what will best fur-

[1] Mr. Justice Clark wrote at pages 440, 441:
"Petitioner, however, contends that a different rule should determine whether there has been a violation of right to counsel. He would have every state denial of a request to contact counsel be an infringement of the constitutional right *without regard to the circumstances of the case.* In the absence of any confession, plea or waiver—or other event prejudicial to the accused—such a doctrine would create a complete anomaly, since nothing would remain that could be corrected on new trial. Refusal by state authorities of the request to contact counsel necessarily would then be an absolute bar to conviction. On the other hand, where an event has occurred while the accused was without his counsel which fairly promises to adversely affect his chances, the doctrine suggested by petitioner would have a lesser but still devastating effect on enforcement of criminal law, for it would effectively preclude police questioning—*fair as well as unfair* —until the accused was afforded opportunity to call his attorney. Due process, a concept 'less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights,' Betts v Brady, 316 US 455, 462, 86 L Ed 1595, 1601, 62 S Ct 252 (1942), demands no such rule."

ther its own security in the administration of criminal justice demands appropriate respect for the deliberative judgment of a state in so basic an exercise of its jurisdiction. Considerations of large policy in making the necessary accommodations in our Federal system are wholly irrelevant to the formulation and application of proper standards for the enforcement of the Federal criminal law in the Federal courts." [Emphasis supplied.]

Likewise, an obligation of this Court is to insist on "civilized standards of procedure and evidence."

A unanimous Court in Gale v United States, 17 USCMA 40, 42, 37 CMR 304 (1967), agreed that "the intent of Congress [was] to confer upon this Court a general supervisory power over the administration of military justice."

Although having reasoned that the refusal to allow Mason to consult counsel is not, under these circumstances, constitutionally protected and that there are no facts indicative that the refusal sufficiently prejudiced his ability to defend, I believe there is a duty upon this Court to act to insure a confined service member who has no appointed counsel the right to consult legal counsel.

Prior statements of this Court attest appreciation for the different problems that a military accused faces than faced by his civilian counterpart accused of crime.

". . . Especially is this so when consideration is given to the unique position of a large number of military accused. Many are now serving, by reason of compulsory laws, away from home, family, and friends for the first time and some are of an age where in other jurisdictions they would be held responsible only as juveniles. These factors call for extraordinary concern." [United States v Donohew, 18 USCMA 149, 152, 39 CMR 149 (1969).]

Legal counseling at the early stages not only is often invaluable to the defense of the case but also serves to provide an accused with knowledge with respect to his conduct while in confinement, his conduct if interrogated, and even to advise him regarding the legality of the confinement. In addition, such an accused is to be relieved from the anxiety of being without advice concerning matters of the greatest personal importance to him. In the instant case I do not know nor will I speculate on what would have been the course of events had the accused been afforded the right to consult counsel upon request.

An accused, as here, with no right to be admitted to bail (see Levy v Resor, 17 USCMA 135, 37 CMR 399 (1967)) has little practical means to procure counsel unless counsel is provided for him.

As I understand the organization of the armed services, free legal counsel is available for those whose needs require it. Confinement, of course, prevents any military accused from seeking out the counsel that the military has available for needed consultation. Stated another way, confinement coupled with an unsatisfied request for counsel effectively denies a member the right to the counsel although in theory, at least, counsel is available.

As noted hereinabove in United States v Gunnels, supra, it was stated that a suspect subject to interrogation in a criminal case cannot be precluded from obtaining legal advice even if he is not entitled to appointment of counsel. See also United States v Rose, supra. In United States v Przybycien, supra, we stated that "[t]he need for the assistance of counsel during extended, but necessary, confinement is patent." Therein, it is also stated:

". . . It is appropriate, therefore, to give a prisoner in confinement for more than a brief period specific advice as to his right to consult an attorney and right to prepare for trial."

We strive to make the system of military justice equally as fair, if not more fair, than any other.

Where the observance of a procedure is so basic to the fair and orderly conduct of a criminal case, without which those who come to face the reality of possible criminal sanction cannot be said to have been extended fundamental fairness, then our duty is clear to demand and insure procedures to make what is unfair now fair. Our former cases mentioned above have made suggestions of appropriateness and vouchsafed need; the facts of the instant case now indicate that assurance is desiderated.

What, then, is the standard of fundamental fairness to be applied? In the ordinary Federal system, accused is entitled to an arraignment which, as noted above, must be promptly held. McNabb v United States, supra. One of the original purposes of such speedy arraignment was to assure accused "of his right to retain counsel." Rule 5(b), Federal Rules of Criminal Procedure (1946 edition); Mallory v United States, 354 US 449, 1 L Ed 2d 1479, 77 S Ct 1356 (1957), at pages 453, 455. The present Rule, however, adds that the arraigning magistrate must also advise the defendant "of his right to request the assignment of counsel if he is unable to obtain counsel." Rule 5(b), supra (1966 edition).

As noted above, there is no formal requirement that military counsel be appointed until charges are preferred. But somewhat analogous to the "without unnecessary delay" requirement of Rule 5 there is a statutory requirement that "immediate steps . . . be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." Article 10, Code, supra. In addition, Article 33, Code, supra, requires the charges, pretrial investigation, and allied papers be forwarded within eight days after an accused is ordered arrested or confined, if practicable.

While these enactments principally are concerned with issues of speedy trial, they also bear heavily on the question of entitlement to counsel. Article 33, in particular, conceives of the preference of charges, completion of the investigation, and forwarding of the case within eight days. If Article 33's command is followed—as required in the ordinary case—the accused would have counsel appointed for him soon after confinement. He would receive such representation at least by the time of the Article 32 investigation—the military equivalent of the Federal preliminary hearing—and could suffer no more than eight days' lack of counseling and advice.

I believe, therefore, that Articles 10 and 33 offer a proper and measurable standard for requiring the Government to furnish an accused in confinement with counsel for consultation even if charges have not been preferred. There may be many occasions on which pressing military considerations and the need for investigation will delay their preference and completion of other requisite procedures within eight days after an accused is placed in arrest or confinement. On many such occasions, however, it will be possible to furnish him with counsel who can not only advise him but can speed the disposition of the matter. I do not mean that an accused, confined and uncharged, must be furnished counsel for consultation an unreasonable number of times, only that he have the opportunity to be effectively advised.

It is also recognized that there may be occasion when counsel is unavailable, as, for example, when an accused is at sea or his unit is heavily engaged. But the law does not demand the impossible. Article 33 speaks expressly in terms of practicability, with the added requirement that *impracticability* be explained in writing by the commander concerned. Thus, conceding the imperative of military necessity, I deem it compatible with the Code to require that counsel must be furnished an individual on preference of charges or, if not preferred, upon request he should be allowed to consult counsel within eight days after his arrest or confinement, if practicable. The failure so to act requires explanation.

**398**

Accordingly, in the exercise of our supervisory power, I would hold, commencing on a date beginning thirty days after promulgation of this opinion, all services be directed to take action to provide that an accused be furnished counsel on preference of charges or, if charges are not preferred, upon request such an accused must be allowed to consult counsel within eight days after his arrest or confinement, if practicable. Cases tried prior to that date will, as herein, be judged on the extent of the impact of denial to the accused of such representation.

In the instant case, I would find that four unsatisfied requests for consultation with counsel while confined for forty-nine days without charges having been preferred is so fundamentally unfair that the resultant impact is unconscionable, and fundamental fairness requires dismissal.

The conviction is reversed and the charges are ordered dismissed.

QUINN, Judge (concurring in the result):

I have a number of reservations about the principal opinion. It indicates, for example, that the only part of Article 33 that "require[s] interpretation" is the "meaning of the term 'practicable.'" In my opinion, Article 33 presents many unanswered questions.

In United States v Callahan, 10 USCMA 156, 27 CMR 230 (1959), we noted, but did not decide, the question whether dismissal of a charge was required if there was a failure to comply with the Article's requirement for written explanation of the delay in forwarding the charge. Earlier, in United States v Hounshell, 7 USCMA 3, 21 CMR 129 (1956), we commented on, but did not decide, whether automatic dismissal of a charge was required for failure to comply with the eight-day provision for forwarding a charge. Also, in discussing Article 27's requirement for appointment of a lawyer to represent the accused, the principal opinion reasons that an uncharged accused is not entitled to counsel because Article 27 is inoperative until there is a general court-martial. Article 33, too, applies to persons "held for trial by general court-martial," but the principal opinion is silent as to when an accused can be said to be "held for trial." See United States v Tibbs, 15 USCMA 350, 356–357, 35 CMR 322 (1965).

Notwithstanding my reservations as to the rationale of the principal opinion, and without endorsing its thirty-day rule, I concur in the result it reaches because the circumstances, including the frustration of the accused's efforts to consult counsel, demonstrate, in my opinion, "willful, purposeful, vexatious . . . [and] oppressive delay by the Government." United States v Brown, 13 USCMA 11, 14, 32 CMR 11 (1962); see also United States v Callahan, supra; United States v Parish, 17 USCMA 411, 416, 38 CMR 209 (1968).

DARDEN, Chief Judge (dissenting):

On the speedy trial issue, we have assumed that Article 10, Uniform Code of Military Justice, 10 USC § 810, is more importunate in its effect on the timing of the trials in the armed forces than is the speedy trial provision in the Sixth Amendment to the Constitution as Article III courts have applied this to civilian trials. United States v Burton, 21 USCMA 112, 44 CMR 166 (1971).

In Article III courts reversals of convictions for lack of speedy trial appear to require pretrial delays of far greater duration than are required for reversals in the military court-martial system. (Annotation: Speedy Trial, 21 L Ed 2d 905.)[1] In either case the length of pretrial delay is a variable that is measured by a test

---

[1] *Compare* United States v Weisenmuller, 17 USCMA 636, 38 CMR 434 (1968); United States v White, 17 USCMA 462, 38 CMR 260 (1968); United States v Parish, 17 USCMA 411, 38 CMR 209 (1968); United States v Keaton, 18 USCMA 500, 40 CMR 212 (1969); and United States v Hubbard, 21 USCMA 131, 44 CMR 185 (1971), *with* United States v Lustman, 258 F2d

of reasonableness under the circumstances. United States v Ewell, 383 US 116, 15 L Ed 2d 627, 86 S Ct 773 (1966); United States v Hawes, 18 USCMA 464, 40 CMR 176 (1969).

Indifference or neglect that permits continued requests for consultation to go unanswered is indefensible. Although this kind of heedlessness may be rare, when it occurs it tends to disparage the entire military justice process. Despite some reservations about the counsel requirements the principal opinion would impose, I nonetheless support the objective that whenever practicable an accused in confinement who desires to do so should have an opportunity to consult a lawyer before the law requires that a counsel be appointed for him.

But I also adhere to the conviction that violations of Articles 10 and 33, Code, supra, 10 USC §§ 810 and 833, are to be tested for their prejudicial effect. United States v Burton, supra; United States v Mladjen, 19 USCMA 159, 41 CMR 159 (1969); and United States v Przybycien, 19 USCMA 120, 41 CMR 120 (1969). In United v States v Marion, 404 US 307, 325, 30 L Ed 2d 468, 92 S Ct 455 (1971), the Supreme Court reversed a district court's dismissal of an indictment for lack of speedy trial because "No actual prejudice to the conduct of the defense is alleged or proven, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them." In the absence of a showing of specific prejudice, Article III courts consistently reject speedy trial contentions. See United States v Durham, 413 F2d 1003 (CA 5th Cir) (1969), certiorari denied, 396 US 839, 24 L Ed 2d 89, 90 S Ct 100 (1969); United States v Parker, 419 F2d 679 (CA DC Cir) (1969); and United States v Perez, 398 F2d 658 (CA 7th Cir) (1968), certiorari denied, 393 US 1080, 21 L Ed 2d 772, 89 S Ct 851 (1969).

In the case before us the appellant's total pretrial confinement amounted to 131 days or approximately 4-1/2 months, with little more than one-half this period spent without legal assistance. Before the Article 32 investigation Mason was assigned counsel.

Obviously, restraint without the right to bail is disadvantageous. But Mason suffered no more than other confined members of the armed forces, since the Uniform Code is without a bail provision. In this instance, I agree that questionable judgment resulted in a proceeding that was less than a model of speedy trial but I see no evidence that the delay was willful, purposeful, or vexatious.

Appellate defense counsel suggests that the appointment of counsel the day before the Article 32 proceeding lessened the effectiveness of the defense's preparation for that proceeding. It is significant, however, that when trial was reached the defense counsel made no issue of this. And the defense does not now contend that Mason suffered identifiable harm at the trial or in the development of his case by the failure to grant his request for consultation with a lawyer. At all "critical stages" of the appellant's case he had the aid and advice of counsel. In my opinion, there is no substantial factual difference between this case and United States v Adams, 21 USCMA 401, 45 CMR 175 (1972), in which we rejected contentions similar to the ones involved here. I therefore would affirm the decision of the Court of Military Review.

---

475 (CA 2d Cir) (1958), certiorari denied, 358 US 880, 3 L Ed 2d 109, 79 S Ct 118 (1958); United States v Rivera, 346 F2d 942 (CA 2d Cir) (1965); and United States v McWilliams, 69 F Supp 812 (DC DC) (1946), affirmed, 163 F2d 695 (CA DC Cir) (1947).