*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and HARRELL
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Alexander R. MARCY**
Corporal (E-4), U.S. Marine Corps
*Appellee*

**No. 202500137**

_____

Decided: 16 October 2025

Appeal by the United States Pursuant to Article 62, UCMJ

Military Judge:
Todd J. Gaston

Before a general court-martial convened at Marine Corps Base Camp
Pendleton, California

For Appellant:
*Colonel Scott A. Wilson, USMC*
*Lieutenant Colonel Candace G. White, USMC*

For Appellee:
*Captain Colin P. Norton, USMC*

Judge GANNON delivered the opinion of the Court, in which Senior Judge KISOR and Senior Judge HARRELL joined.

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————

GANNON, Judge:

This case is before us on an interlocutory appeal pursuant to Article 62(a)(1)(A), Uniform Code of Military Justice (UCMJ). Appellee is charged with wrongful disposition of military property and obstruction of justice in violation of Articles 108 and 131b, UCMJ, for allegedly wrongfully selling image intensifier tubes (military-grade components of night-vision equipment).[1]

## I. BACKGROUND

Appellee allegedly concocted an elaborate scheme to steal and then sell sensitive military-grade components of night-vision equipment. To this end, Appellee formed a limited liability corporation (LLC), advertised the ill-gotten night-vision components for sale online, and sold the equipment to third parties on at least ten occasions. Appellee is also alleged to have obstructed the investigation of his misconduct by attempting to conceal a cell phone that contained incriminating evidence.

Appellee was placed into pretrial confinement on 25 June 2024. On 3 December 2024, defense counsel moved the trial court to dismiss the charges and specifications for violation of Article 10, UCMJ. On 19 December 2024, the military judge granted the defense motion to dismiss.

On 21 December 2024, the Government filed a motion for reconsideration with the military judge. On 13 January 2025, the Government filed a timely notice of appeal and the case was docketed with this Court that same day. However, on 21 February 2025, citing this Court's opinion in *United States v. Smith*, the Government moved to withdraw its appeal. [2] On 24 February 2025,

————————————

[1] Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 908, 931b.

[2] 85 M.J. 565 (N-M. Ct. Crim. App. 2025), *rev. denied*, ___ M.J. ___, No. 25-0107/NA, 2025 CAAF LEXIS 391 (C.A.A.F. May 19, 2025). In *Smith*, we held that a timely filed

we granted that request for the trial court to consider the Government's then pending, 21 December 2024 motion for reconsideration. On 6 March 2025,[3] the military judged denied the Government's motion for reconsideration. On 7 March 2025, the Government filed a timely notice of appeal with the military judge and again, the case was docketed with this Court.[4]

The following summarizes important dates pertinent to Appellee's motion to dismiss:

> March 2023. The U.S. Army Criminal Investigation Division notifies the Naval Criminal Investigative Service (NCIS) of the potential wrongful sale of government property involving Appellee.

> 25 June 2024. Appellee is placed in pretrial confinement.

> 28 June 2024. An initial review officer determines Appellee will remain in pretrial confinement after conducting a Rule for Courts-Martial (R.C.M.) 305 hearing.

> 26 July 2024. The Government requests excludable delay from 26 July 2024 through 23 August 2024. On 1 August 2024, the convening authority grants 29 days of excludable delay.

> 30 July 2024. Appellee demands speedy trial.

> 19 August 2024. The Government requests and is granted excludable delay from 24 August 2024 through 23 September 2024.

> 21 August 2024. Appellee demands speedy trial.

> 27 September 2024. The Government prefers charges against Appellee.

> 30 September 2024. Preliminary hearing officer is appointed. Article 32 hearing is set for 21 October 2024.

> 18 October 2024. Appellee waives his Article 32 hearing.

> 7 November 2024. Charges referred.

> 2 December 2024. Appellee is arraigned, again demands a speedy trial.

> 19 December 2024. The military judge grants the Defense motion to dismiss for violation of Article 10.

---

motion for reconsideration with the trial court renders the underlying trial court's ruling non-final for purposes of appeal under Article 62, UCMJ.

[3] Although the military judge's ruling is dated 15 March 2025, a review of the record revealed that ruling was issued on 6 March 2025. App. Ex. XLV at 5.

[4] App. Ex. XLVII.

6 March 2025. The military judge denies Government's motion for reconsideration.

## II. DISCUSSION

### A. Jurisdiction.

The Government may only appeal interlocutory matters in a court-martial with express congressional authorization. Congress provided the Government limited authority to appeal in Article 62 which states in relevant part:

> (a)(1) In a trial by general or special court-martial . . . the United States may appeal the following:

> (A) An order or ruling of the military judge which terminates the proceedings with respect to a charge or specification.[5]

Our superior court has held that "an appeal must actually fall within the strictures of Article 62(a)(1)(A) . . . to create appellate jurisdiction."[6] Here, we have jurisdiction to review the military judge's ruling of 19 December 2024 and supplemental ruling of 6 March 2025 as they terminated the proceedings with respect to all charges and specifications.

### B. Standard of Review.

#### 1. Article 62, UCMJ

We review a military judge's ruling to dismiss charges and specifications for a violation of Article 10 *de novo*.[7] In an appeal under Article 62, we review "the evidence in the light most favorable to the party which prevailed below";[8] here, Appellee. We are limited to acting only with respect to matters of law.[9] On matters of fact, we are "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous."[10] We may not "find [our] own facts or substitute [our] own interpretation of the facts."[11]

---

[5] 10 U.S.C. § 866(a)(1)(A).

[6] *United States v. Jacobsen*, 77 M.J. 81, 85 (C.A.A.F. 2017).

[7] *United States v. Cooper*, 58 M.J. 54, 59 (C.A.A.F. 2003).

[8] *United States v. Buford*, 74 M.J. 98, 100 (C.A.A.F. 2015).

[9] R.C.M. 908(c)(2).

[10] *United States v. Becker*, 81 M.J. 483, 489 (C.A.A.F. 2021).

[11] *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007).

*2. Article 10, UCMJ*

Whenever an accused is placed in pretrial confinement, "immediate steps shall be taken" to inform the accused of the charges and either bring the accused to trial or dismiss the charges.[12] In order to properly analyze an Article 10 claim, courts look to the "immediate steps" standard in the statute, and as reflected in applicable case law.[13]

Importantly, Article 10 does not require "constant motion, but reasonable diligence in bringing the charges to trial."[14] Our framework to determine whether the Government proceeded with the required reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether Appellee made a demand for speedy trial; and (4) prejudice to Appellee.[15] Importantly, "[s]hort periods of inactivity are not fatal to an otherwise active prosecution."[16] As we conduct our analysis, "we remain mindful that we are looking at the proceeding as a whole and not mere speed."[17] The "essential ingredient is orderly expedition and not mere speed."[18]

## C. Analysis.

*1. Length of Delay.*

Appellee was placed in pretrial confinement on 25 June 2024. The military judge, while correctly acknowledging that case law mandates a holistic analysis of the Government's processing of a case in an Article 10 context, tethered his analysis to a discrete period of apparent lessened Government activity in the processing of the case. Specifically, the military judge focused on the 66 days from the preferral of charges on 27 September 2024 to arraignment on 2 December 2024.[19]

---

[12] Article 10, UCMJ 10 U.S.C. § 810. Although not raised by either Party, we note that Congress amended Article 10, UCMJ, in 2016 as part of Pub. L. 114-328. These amendments became effective on 1 January 2019 based on § 5542 of Pub. L. 114-328 and Executive Order 13825.

[13] *See United States v. Mizgala*, 61 M.J. 122, 124 (C.A.A.F. 2005).

[14] *See Cossio*, 64 M.J. at 256.

[15] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[16] *See Mizgala*, 61 M.J. at 127.

[17] *Id.* at 129.

[18] *United States v. Mason*, 21 C.M.A. 389, 393, 45 C.M.R. 163, 167 (C.M.A. 1972) (quoting *Smith v. United States*, 360 U.S. 1, 10 (1959)).

[19] App. Ex. XLII at 14.

The military judge reasoned that "[t]he delay after preferral of charges until arraignment - a period of 66 days - did not demonstrate reasonable diligence in light of two previous speedy trial demands that also alleged violations of Article 10 responsibilities."[20]

The military judge further focused on several discrete date ranges within the above 66 days to justify the dismissal of this case. The military judge found that "[t]he government inexplicably set the Article 32 hearing to take place 24 days after preferral of charges."[21] The military judge also took umbrage with the Government's "dilatory" processing of Appellee's Article 32 waiver.[22] The military judge was further concerned that the staff judge advocate (SJA) "sat" on the case from 30 October until 7 November.[23] Finally, the military judge found that the Government "dragged its feet" by arraigning Appellee 17 days after service of his referred charge sheet.[24]

On the other hand, the military judge found that the Government was diligent in processing the case during the first 100 days of Appellee's pretrial confinement.[25] The military judge correctly noted that this case was complex.[26] The military judge concluded that "the delay during the initial stages of the investigation was reasonable in light of the complexity of the case, the nature and amount of evidence law enforcement collected, and the challenge of tracking military property . . . ."[27] We agree with this characterization.

However, in focusing on the 66 days of post-preferral delay, the military judge's ruling demonstrates a misunderstanding of our, and our superior

---

[20] App. Ex. XLII at 14.

[21] App. Ex. XLII at 14.

[22] App. Ex. XLII at 14.

[23] App. Ex. XLII at 14.

[24] App. Ex. XLII at 15.

[25] App. Ex. XLII at 14.

[26] App. Ex. XLII at 9. We note that this case appears extraordinarily complex. The record before us implicates Appellee in significant and involved illicit activity including: the formation of a limited liability corporation; tax evasion; the use of aliases and co-conspirators; money laundering; multiple, repeated illicit online sales necessitating extensive forensic computer analysis; an undercover agent's attempts to make contact with Appellee; law enforcement surveillance activities; and investigative actions aimed at building investigators' understanding of the United States' sometimes Byzantine procurement process, coupled with the requirement that the investigators trace various "lots" of night vision intensifiers specifically to Appellee via various manufacturers.

[27] App. Ex. XLII at 14.

court's, analysis of Article 10 claims. Time and time again, the military judge takes issue with discrete periods of lessened Government action, while failing to ascertain whether or not the Government's processing of the case was, overall, diligent during the totality of Appellee's pretrial confinement. Therefore, we look to whether the Government was reasonably diligent in the processing of the case for the entirety of Appellee's pretrial confinement.

  2. *Reasons for the Delay.*

As noted above, this case is complex. Here, the complexity matters. In determining how case specifics and complexity impacts our Article 10 inquiry, "we consider the particular circumstances of the case because the delay that can be tolerated for an ordinary street crime is considerably less than [that] for a serious, complex conspiracy charge."[28] In reviewing the record before us, including  the military judge's findings of fact, it is clear that this case presented significant technological, evidentiary, and logistical challenges far in excess of an "ordinary" prosecution. The Government requested multiple periods of excludable delay, issued numerous subpoenas, conducted covert surveillance of Appellee, and searched Appellee's vehicle, home, storage unit and electronic devices. The Government's investigation of Appellee's alleged misconduct generated a vast quantity of evidence to review, assess, and marshal in preparation for trial.

While acknowledging the delays with respect to the appointment of the Article 32 preliminary hearing officer, the processing of the Article 32 waiver, the timeline associated with the SJA's review of the case in preparation for briefing the convening authority, and the scheduling of the arraignment, we find that, under the circumstances of this case, the Government, in the aggregate, was diligent.

Importantly, even during the periods where the military judge identified discrete periods of concern, there was reasonable diligence in processing this case. For example, NCIS agents made repeated contact with several different organizations and activities in attempts to track evidence, before and after preferral of charges, i.e., during a period where the military judge noted lessened Government activity.[29] After the preferral of charges, trial counsel "perfected" a pending evidentiary subpoena, and submitted three additional investigative subpoenas. The military judge also found that trial counsel coordinated the identification and assignment of a preliminary hearing officer, consulted the

---

[28] *United States v. Cooley*, 75 M.J. 247, 260 (C.A.A.F. 2016) (internal citations omitted) (citing *Barker*, 407 U.S. at 531).

[29] App. Ex. XLII at 10.

SJA regarding Appellee's Article 32 preliminary hearing, and made R.C.M. 405 disclosures to trial defense counsel. In our view, the above constitutes reasonable diligence post-preferral.

On 18 October 2024, three days before the scheduled Article 32 preliminary hearing, Appellee unconditionally waived the hearing.[30] As Appellee's waiver of the Article 32 preliminary hearing would result in there being no issuance of a preliminary hearing officer report, the SJA worked over the weekend reviewing the case and its evidence in preparation for briefing the convening authority on the referral decision.[31] The military judge found that the SJA was aware of Appellee's demand for speedy trial.[32] However, the convening authority, the Commanding General, was on official travel in the Pacific when the SJA was prepared to brief him on the referral decision. And while command had devolved to the unit's senior logistics officer during the Commanding General's absence, the SJA made a decision to wait until the Commanding General returned from his official travel to brief the referral decision. The SJA's rationale was based on the senior logistics officer's limited experience in military justice and unfamiliarity with the case.[33]

The military judge found that despite the SJA's awareness of Appellee's demand for speedy trial, the SJA decided to brief the Commanding General in-person, as opposed to telephonically, because that had been his habit and routine practice, and the Commanding General's overseas travel schedule included meeting with pacific area commands, and an international engagement with foreign government officials.[34] The SJA's decision to brief the Commanding General in-person upon his return from official travel led to a seven-day

---

[30] App. Ex. XLII at 5.

[31] App. Ex. XLII at 5.

[32] App. Ex. XLII at 11.

[33] App. Ex. XLII at 6.

[34] App. Ex. XLII at 6. We note that in the military judge's findings of fact, the military judge specifically notes that the international engagement in question was a U.S. Marine Corps Birthday Ball ceremony. We further note that while this finding is not clearly erroneous, it appears incomplete based on the record. The record reflects that the Commanding General was apparently tasked with conducting an international engagement at the U.S. Embassy with members of the Indonesian government and military. In our analysis, a tasked international engagement in the execution of U.S. foreign policy is a weighty operational commitment, and would have provided more helpful context as to the scope and nature of the Commanding General's duties while abroad than simply describing the event as a Marine Corps Birthday Ball ceremony. R. at 148-49.

period of delay, from 31 October 2024 to 7 November 2024. The military judge found fault with the SJA's decision: "the SJA could have provided an in-person brief to the Convening Authority based on a devolution of command, or . . . conduct[ed] a telephonic brief with the Commanding General while [he was] in the Pacific."[35] We disagree with the military judge's characterization of the SJA's actions in this case. We find the characterization that the SJA "sat" on the case to be unsupported by the record. We find that these decisions by the SJA were, given the context of this case, reasonable – and not "negligent" as the military judge concluded – despite the fact that the SJA was aware that Appellee had previously made a demand for speedy trial.[36]

Based on our review of the *case processing as a whole*, we are convinced that the Government was reasonably diligent in the processing of this case.

### 3. *Demand for Speedy Trial.*

Appellee made two demands for speedy trial. One on 30 July 2024, and a second on 22 August 2024.[37] However, a demand for speedy trial, in and of itself, does not obligate the Government to rush an otherwise unprepared case to trial. Indeed, "the Government has the right (if not the obligation) to thoroughly investigate a case before proceeding to trial."[38]

Based on our review of the military judge's rulings, the Government was engaged in actions that were indicative of an active, post-preferral prosecution. We find that despite Appellee's demands for speedy trial, the Government moved with reasonable diligence, continuing to prepare the case for trial throughout Appellee's time in pretrial confinement.

### 4. *Prejudice.*

"Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."[39] We, therefore, examine the question of prejudice in light of three important interests the Supreme Court identified in *Barker*: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern; and (3) to limit the possibility that the defense will be impaired.[40] "Of these, the most serious is the last, because the

---

[35] App. Ex. XLII at 12.

[36] App. Ex. XLII at 11-12.

[37] Appellee also made an oral demand at the arraignment on 2 December 2024.

[38] *Cossio*, 64 M.J. at 258.

[39] *Mizgala*, 61 M.J. at 129 (quoting *Barker*, 407 U.S. at 532).

[40] *Barker*, 407 U.S. at 532.

inability of a defendant adequately to prepare his case skews the fairness of the entire system." [41]

The military judge found that Appellee entered a "no pay due status" on 26 August 2024 while in pretrial confinement.[42] Appellee argues that he suffered prejudice while confined because while in a no pay due status, he was unable to manage his finances. Subsequently, his vehicle was repossessed.[43] Additionally, Appellee's landlord sent him a notice of "payment or relinquishment of the premises" in September of 2024.[44] Appellee argues that his no pay due status led to him suffering unreasonable and heightened anxiety while confined.

The military judge rejected this argument.[45] The military judge found that "the Court weighed the prejudice factor in favor of the Government, but minimally so."[46] We interpret this to mean that the military judge found that the Appellee suffered no prejudice while in confinement. We agree.

---

[41] *Id.*

[42] App. Ex. XLV at 3.

[43] App. Ex. XLII at 7.

[44] App. Ex. XLII at 7.

[45] App. Ex. XLV at 4.

[46] App. Ex. XLV at 4 (internal quotations omitted).

### III. CONCLUSION

As indicated above, in the face of a claim that the United States violated Article 10, we must look to the case processing on the whole, and determine, on that broader scope of analysis, whether the Government moved the case to trial with reasonable diligence. We will not "hunt and peck" for discrete periods of inactivity to justify terminating an otherwise active prosecution. Thus, as in *Mizgala*, we do not consider the 66 post-preferral days in a vacuum, as the military judge did here. We consider and analyze the proceeding as a whole. In the Article 10 context, we look to the Government's processing of the case from the imposition of pretrial confinement to arraignment, including the full complement of Government actions in furtherance of the prosecution to ascertain whether the Government was diligent.

The Government's appeal is **GRANTED**. The military judge's ruling is **VACATED** and the record of trial is returned to the Judge Advocate General for remand to the convening authority and delivery to the military judge for further proceedings consistent with this opinion.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court