UNITED STATES, Appellee

v.

Maurice S. WILSON, Private First Class
U.S. Army, Appellant

No. 13-0096

Crim. App. No. 20110146

United States Court of Appeals for the Armed Forces

Argued April 3, 2013

Decided July 11, 2013

ERDMANN, J., delivered the opinion of the court, in which RYAN and STUCKY, JJ., joined. BAKER, C.J., filed a separate dissenting opinion, in which COX, S.J., joined. COX, S.J., filed a separate dissenting opinion.

Counsel

For Appellant: Captain Brandon H. Iriye (argued); Colonel Patricia A. Ham, Lieutenant Colonel Imogene M. Jamison, and Major Richard E. Gorini (on brief).

For Appellee: Captain Kenneth W. Borgnino (argued); Lieutenant Colonel Amber J. Roach and Major Katherine S. Gowel (on brief); Major Robert A. Rodrigues.

Military Judge: Andrew J. Glass

**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

A military judge sitting as a general court-martial convicted Private First Class Maurice S. Wilson of various offenses related to drug possession and distribution, as well as failure to obey a lawful order, in violation of Articles 92 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a (2006). The military judge sentenced Wilson to reduction to E-1, confinement for forty months, and a bad-conduct discharge. Pursuant to a pretrial agreement, the convening authority approved twenty-one months confinement and the balance of the sentence. Wilson was credited with 174 days of confinement credit. The United States Army Court of Criminal Appeals summarily affirmed the findings and sentence. United States v. Wilson, No. ARMY 20110146 (A. Ct. Crim. App. Aug. 28, 2012).

"Article 10, UCMJ, ensures a servicemember's right to a speedy trial by providing that upon 'arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.'" United States v. Cossio, 64 M.J. 254, 255 (C.A.A.F. 2007). We granted review in this case to determine whether Wilson was denied his speedy trial rights under Article 10.[1] We hold that Wilson's Article 10 right

---

[1] We granted review of the following issue:

United States v. Wilson, No. 13-0096/AR

to a speedy trial was not violated and affirm the Army Court of Criminal Appeals.

## Background

### a. Trial Timeline

On August 17, 2010, a confidential source reported that Wilson was selling drugs out of his barracks room on Fort Drum, New York. A search authorization was obtained and drugs were discovered in Wilson's room. Later that day, the Government placed Wilson in pretrial confinement at a medium security civilian prison in Lowville, New York. Wilson waived pretrial confinement review on August 22, 2010.

Thirty-six days after being placed in confinement, on September 22, 2010, the Government preferred charges against Wilson. On October 1, the special court-martial convening authority (SCMCA) appointed an Article 32, UCMJ, investigating officer. On October 21, Wilson offered to plead guilty to certain charges and on November 10 he submitted an amended offer to plead guilty. The convening authority granted testimonial immunity to four potential witnesses on November 16, 2010. The Government rejected Wilson's amended offer to plead guilty on November 30, 2010. On December 6, the SCMCA appointed a new

---

Whether Appellant was denied his right to a speedy trial in violation of Article 10, UCMJ, when the Government failed to act with reasonable diligence in bringing him to trial.

United States v. Wilson, 72 M.J. 7 (C.A.A.F. 2012) (order granting review).

3

Article 32, UCMJ, investigating officer. Wilson filed a demand for a speedy trial on December 14, 2010.

The newly appointed Article 32, UCMJ, investigating officer completed his investigation on December 16, 2010. The staff judge advocate's pretrial advice was prepared on December 22, 2010, and charges were referred the same day. Wilson was arraigned on January 4, 2011, 140 days after he was placed in confinement. The military judge set the trial date for February 7, 2011, which resulted in a total pretrial confinement period of 174 days.

b.   Wilson's Motion to Dismiss

On the date of his arraignment, Wilson filed a "Motion To Dismiss For Speedy Trial Violation." The military judge convened Article 39(a), UCMJ, sessions on January 7, 18, and 25, 2011, to hear testimony and arguments on the motion. The defense argued that the Government's delays violated Wilson's Fifth and Sixth Amendment rights providing for due process and a speedy trial as well as the guarantees of Article 10 and Rule for Courts-Martial (R.C.M.) 707. As Wilson has limited his appeal before this court to his Article 10 claims, we need not discuss the constitutional and R.C.M. 707 arguments he made below.

With respect to his Article 10 claim, Wilson relied on the four-part Barker test which this court uses to evaluate Article

10 speedy trial claims. See, e.g., United States v. Mizgala, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). Wilson argued that "the Government had not exercised reasonable diligence in bringing the charges to trial." He specifically noted the following delays: thirty-six days between confinement and preferral of charges; fifty-five days between preferral and the convening authority's grants of immunity to other actors; twenty-two days between the grants of immunity and appointment of an investigating officer; and twenty days between the submission of the second offer to plead guilty and its rejection by the convening authority.

Wilson argued that he was "aware of no good reason for delaying this case so long." He also noted his December 14, demand for a speedy trial and argued that he was prejudiced by the delay because he was confined in an oppressive environment where he was the only African American among twenty other inmates, some white supremacists.

In urging the military judge to deny the motion, the Government provided considerable detail about its pretrial activities, including: the need for significant investigation by Criminal Investigative Division (CID) agents; the deployment of Wilson's battalion to training activities from September 22 through October 7; the Government's handling of the cases of other individuals implicated in the matter; the departure of the

3rd Brigade Combat Team to Fort Polk, Louisiana, from November 1 to November 24; the ensuing Thanksgiving holiday; and the Article 32 investigation.  The Government argued that "the primary reasons for the length of time between the commencement of pretrial confinement and the arraignment of the accused [are] completion of the investigation and the unit's training in preparation for the upcoming deployment to Afghanistan."

The military judge issued detailed findings of fact and conclusions of law denying the motion to dismiss, noting that Article 10 is a "'more stringent' or 'more exacting'" standard than the Sixth Amendment.  He then conducted the four-part Barker analysis and found it weighed in favor of the Government because:  (1) the unavailability of the military judge and delays caused by the defense contributed to the overall delays; (2) despite several issues with the Government's handling of the case (slow Article 32 investigation, inattention to time, unreasonably lengthy plea negotiations, and an unusual six-day delay in taking action on Wilson's second offer to plead guilty), the Government exercised reasonable diligence in processing Wilson's case; (3) Wilson made a speedy trial demand which weighed narrowly in his favor; and (4) Wilson's claim that he was prejudiced based on the conditions of his confinement failed as he simply experienced "normal incidents of

confinement."  The military judge found that, on balance, the Government acted with reasonable diligence.

## Discussion

On appeal to this court Wilson claims he was denied his right to a speedy trial under Article 10 because the Government failed to uphold its basic responsibility to exercise reasonable diligence in bringing him to trial in a timely manner.  Wilson argues that the Barker factors weigh in his favor because the defense was not responsible for the delays, he filed a demand for a speedy trial, and he suffered under oppressive conditions of confinement and experienced anxiety and concern.

The Government responds that while the delay might be facially unreasonable, the time directly attributable to the Government encompasses reasonable actions to move Wilson's case to trial.  Additionally, the Government suggests that although Wilson made a demand for a speedy trial, defense activity both before and after the demand "belie his claim" that he actually sought a speedy trial.  Finally, the Government contends that Wilson cannot establish prejudice.  The Government argues that in weighing the Barker factors, Wilson has failed to establish a violation of Article 10.

"This court reviews de novo the question of whether [Wilson] was denied his right to a speedy trial under Article 10, UCMJ, as a matter of law and we are similarly bound by the

facts as found by the military judge unless those facts are clearly erroneous."  Cossio, 64 M.J. at 256 (citing Mizgala, 61 M.J. at 127; United States v. Cooper, 58 M.J. 54, 58-59 (C.A.A.F. 2003)).

"[T]he constitutional right to a speedy trial is a fundamental right.  It is protected both by the Sixth Amendment and Article 10."  Cooper, 58 M.J. at 60 (citation omitted). "Article 10, however, 'imposes [on the Government] a more stringent speedy-trial standard than that of the Sixth Amendment.'"  Id. (alteration in original) (quoting United States v. Kossman, 38 M.J. 258, 259 (C.M.A. 1993)).[2]  We have

---

[2] We have repeatedly stressed that Article 10 is a "more stringent" standard than the Sixth Amendment.  The Court of Military Appeals explained this standard in United States v. Burton, 21 C.M.A. 112, 117, 44 C.M.R. 166, 171 (1971) (citation omitted), overruled by Kossman, 38 M.J. at 261, and United States v. McCallister, 27 M.J. 138, 141 (C.M.A. 1988):

> An obvious question is whether the Sixth Amendment requires a more prompt trial than does Article 10. Many decisions of the Article III courts applying the constitutional speedy trial guarantee deal with delays of several years between indictment and trial, typically with the defendant free on bail.  These decisions provide little assistance in deciding whether immediate steps have been taken to try an accused member of the armed forces who has been confined before trial.  We assume for present purposes that the requirements of Article 10 are more rigorous.

As Senior Judge Cox notes in his dissent, United States v. Wilson, 72 M.J. __, __ (2) (C.A.A.F. 2013) (Cox, S.J., dissenting), one of the speedy trial mandates set forth in Burton was later reversed by this court, however Article 10's "more rigorous" standard, as compared to the years-long delays reviewed in Article III courts, remains relevant.  While the

"consistently stressed the significant role Article 10 plays when servicemembers are confined prior to trial." Mizgala, 61 M.J. at 124.

"The standard of diligence under which we review claims of a denial of speedy trial under Article 10 'is not constant motion, but reasonable diligence in bringing the charges to trial.'"[3] Id. at 127 (citations omitted). "Short periods of inactivity are not fatal to an otherwise active prosecution." Id. (citations omitted). "[O]ur framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the

---

federal circuits seem to require a delay approaching a year to review Sixth Amendment speedy trial claims, see Doggett v. United States, 505 U.S. 647, 652 n.1 (1992), a much shorter delay will trigger the full Barker analysis in an Article 10 case. Indeed, in Wilson's case, even the Government concedes that the pretrial delay of 174 days "would likely constitute a facially unreasonable delay." Thus, while Chief Judge Baker's dissent suggests that this court has viewed the "more stringent" Article 10 standard as essentially the same as the Sixth Amendment standard, Wilson, 72 M.J. at __ (2) (Baker, C.J., dissenting), this very case is evidence of the application of a more stringent standard for speedy trials in the military.
[3] As discussed above, see supra p.4, Wilson has not appealed the military judge's ruling with respect to his R.C.M. 707 claim. Given that the court has repeatedly held that "the protections of Article 10 are broader than R.C.M. 707," United States v. Tippit, 65 M.J. 69, 81 (C.A.A.F. 2007), we do not evaluate the claim under the tenets of R.C.M. 707. Again, "[t]he test under Article 10 is whether the government has acted with reasonable diligence." Id.

United States v. Wilson, No. 13-0096/AR

appellant."  Id. at 129 (citing Barker, 407 U.S. at 530).  The

Supreme Court explained:

> We regard none of the four factors . . . as either a
> necessary or sufficient condition to the finding of a
> deprivation of the right of speedy trial.  Rather,
> they are related factors and must be considered
> together with such other circumstances as may be
> relevant.  In sum, these factors have no talismanic
> qualities; courts must still engage in a difficult and
> sensitive balancing process.

Barker, 407 U.S. at 533.  "[W]e remain mindful that we are

looking at the proceeding as whole and not mere speed:  'The

essential ingredient is orderly expedition and not mere speed.'"

Mizgala, 61 M.J. at 129 (quoting United States v. Mason, 21

C.M.A. 389, 393, 45 C.M.R. 163, 167 (C.M.A. 1972)).

a.  Length of the Delay

"The first factor under the Barker analysis is the length

of the delay which is to some extent a triggering mechanism, and

unless there is a period of delay that appears, on its face, to

be unreasonable under the circumstances there is no necessity

for inquiry into the factors that go into the balance."  Cossio,

64 M.J. at 257 (citation and internal quotation marks omitted).

The military judge adopted a timeline stipulated to by the

parties as an essential finding of fact.  From this timeline the

military judge found that 140 days elapsed from the time Wilson

was placed in pretrial confinement to his arraignment and, by

10

the date of his trial, Wilson would have been confined for a total of 174 days.[4]

Although the military judge did not explicitly hold that the delay was sufficient to trigger the full Barker analysis, he went on to conduct the full four-part analysis, which indicates that he made such a holding.  In its brief the Government concedes that the 174-day delay "would likely constitute a facially unreasonable delay."  We agree that the 174-day period in Wilson's case is sufficient to trigger the full Barker analysis under the circumstances of this case.  See Mizgala, 61 M.J. at 127.

b.    Reasons for the Delay

"Closely related to length of delay is the reason the [G]overnment assigns to justify the delay.  Here, too, different weights should be assigned to different reasons."  Barker, 407 U.S. at 531.  For example:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [G]overnment.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the [G]overnment rather than with the defendant.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

---

[4] The military judge prospectively computed this figure based on the scheduled date of trial, February 7, 2011, which was the actual date the trial was held.

Id. "Delays attributable to the defendant do not weigh in favor of a Sixth Amendment violation." United States v. Toombs, 574 F.3d 1262, 1274 (10th Cir. 2009).

"As a general matter, factors such as staffing issues, responsibilities for other cases, and coordination with civilian officials reflect the realities of military criminal practice that typically can be addressed by adequate attention and supervision, consistent with the Government's Article 10 responsibilities." United States v. Thompson, 68 M.J. 308, 313 (C.A.A.F. 2010). We have recognized, however, that "there will be occasions when mission requirements may make it impossible to process cases as expeditiously as we might ideally wish." United States v. Johnson, 17 M.J. 255, 261 (C.M.A. 1984).

In his ruling on the motion, the military judge ruled that he was responsible for sixteen days of the 174-day delay and the defense was responsible for forty-three days. The delay attributable to the Government is therefore 115 days. The military judge went on to set forth three specific time periods which warranted "individual discussion." The first period of concern to the military judge was from October 1 to 23, 2010, which reflects the initial period of the first Article 32 investigating officer's tenure -- a period when no action was taken to complete the investigation. The military judge found

this delay to be "improper and to reflect a lack of proper diligence in a case involving a confined accused."

The second period of delay was from October 22 to November 10, 2010. During this period the parties were "ostensibly in discussions . . . regarding a potential offer to plead guilty." However, the military judge found that there were "insufficient facts before the Court to define what precipitated these lengthy negotiations, or whether the lengthy time period was because of Defense or Government delay," so "based on the Government's burden to provide adequate facts to this Court, that time period was not justified."

The final period of delay identified by the military judge was November 10 to 30, 2010. This period commenced with the submission of Wilson's Offer to Plead Guilty and terminated with the convening authority's rejection of the offer. While the military judge noted that the unit's chain of command was deployed during that period, the length of delay was "unusual and unjustified."

Despite his concerns with these periods of delay, the military judge concluded his analysis of this factor by holding:

> Although the Court is troubled by certain time periods in this case, this Court is required to examine the case as a whole in determining whether an Article 10, UCMJ, violation occurred. The Court finds that this case involved: resolution of complicated immunity issues for several Soldiers implicated in the Accused's charges, testing of seized drugs at the USACIL laboratory, a unit deploying for thirty days to

13

JRTC, as well as apparently complicated pretrial negotiations. The Government's actions, while not "constant motion," do constitute reasonable diligence. I find that this factor weighs in favor of the Government.

As in Mizgala, 61 M.J. at 129, we share the military judge's concern that there appear to be "several periods during which the Government seems to have been in a waiting posture." The Government is tasked with handling cases with "reasonable diligence," id., and the inattention to timeliness in Wilson's case is troubling. However, the stipulated timeline, adopted by the military judge as a finding of fact, provides a factual explanation for much of the delay attributable to the Government.[5] The timeline provides context and explanations which reflect reasonable pretrial decisions and activities including potential immunity for other actors, the unit's pending deployment to Afghanistan, drug testing by USACIL, and "complicated" pretrial negotiations.

---

[5] The parties stipulated to a comprehensive forty-nine point timeline which documents the dates at which the relevant actions were taken. As well as documenting the dates of significant actions in the case, the timeline also documented the significant dates relating to: the CID investigation into both Wilson's actions and the actions of other soldiers related to the drug offenses; the deployment of Wilson's battalion; grants of immunity and courts-martial of potential witnesses; plea negotiations and discussion between the defense and Government; and the period it took for United States Army Criminal Investigation Laboratory (USACIL) to process the evidence. This timeline was very useful in our analysis of the Article 10 claim.

14

The delays identified by the military judge weigh against the Government, however, that weight is minimized when balanced against the Government's explanations as to the overall time period. There is no evidence indicating that the Government was engaged in a "deliberate attempt to delay the trial in order to hamper the defense," which would weigh heavily against the Government. Johnson, 17 M.J. at 259; Barker, 407 U.S. at 531.

c.  Speedy Trial Demand

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is deprived of the right." Johnson, 17 M.J. at 259. Wilson made a demand for a speedy trial on December 14, 2010, at which point he had been in pretrial confinement for 119 days. Noting that the demand for speedy trial did not occur until fourteen days after Wilson's offer to plead guilty was denied, the military judge found that this factor narrowly favored the defense. We agree with the military judge that the timing of Wilson's demand for a speedy trial affords it only slight weight in his favor.

d.  Prejudice

"Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Mizgala, 61 M.J. at 129 (citation and internal quotation marks omitted). These interests are: "(i)

15

to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. (citation and internal quotation marks omitted). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Johnson, 17 M.J. at 259.

Before this court, Wilson's argument on prejudice focuses on the first and second factors of the prejudice test -- oppressive pretrial confinement and the anxiety and concern suffered by the accused. Wilson has not argued that his defense was impaired in any way based on the pretrial delay. Because impairment of the defense is the "most serious" form of prejudice, see id., this portion of the prejudice analysis weighs in favor of the Government.

As to the claim of oppressive confinement, Wilson alleges that he had to endure a racially tense environment at the Lowville jail. At the Article 39(a) hearing, Wilson described his life in confinement prior to the filing of the motion. Wilson testified that he was assigned to a cell by himself and he was locked down in the cell for eight hours at night. During the day he spent his time in a large bay area with approximately twenty other prisoners. There were three or four other military prisoners but Wilson was the only African-American on the bay.

Wilson testified that some of civilian prisoners in the bay directed racial slurs at him and had tattoos of symbols he considered racist. He described a typical experience as follows: "I would be at a table or something and they would come over, like, just walk past me, like 'f---ing n---ers in here,' and stuff of that sort, sir, or a couple of times they made inferences to, like, 'old slavery times,' and stuff of that sort." Wilson indicated that some people were "playing" but others were "more serious."

While we do not condone any type of racially insensitive behavior, it is instructive to our analysis as to the severity of the complained of conduct that Wilson did not file an Article 13 motion concerning his treatment and the record does not reflect that he complained to his chain of command. Failure to raise an Article 13 claim, though not dispositive of an Article 10 claim, may be considered as a relevant factor bearing upon the question of prejudice for oppressive confinement. Thompson, 68 M.J. at 313. Nor did Wilson seek any pretrial confinement remedies for violations of R.C.M. 305,[6] either pretrial or in his clemency request to the convening authority.[7] Accordingly we

---

[6] R.C.M. 305 sets forth the rules applicable when an accused is subject to pretrial confinement. R.C.M. 305(k) allows the military judge to award additional sentence credit based on conduct by confinement officials during pretrial confinement. See United States v. Adcock, 65 M.J. 18, 24 (C.A.A.F. 2007).
[7] See Thompson, 68 M.J. at 313 ("With respect to prejudice from the conditions of her incarceration, we note that although the

17

conclude that Wilson's conditions of confinement did not constitute "oppressive pretrial confinement" in an Article 10 context.

In support of his claim that he suffered from anxiety and concern, Wilson argues that he was not informed of his charges until he had spent thirty-seven days in confinement and also that he was not arraigned until twenty-two days after his demand for a speedy trial.  Here, we are concerned not with the normal anxiety and concern experienced by an individual in pretrial confinement, but rather with some degree of particularized anxiety and concern greater than the normal anxiety and concern associated with pretrial confinement.  See, e.g., Cossio, 64 M.J. at 257 (accepting military judge's finding that there was "'no evidence'" that the defendant's "'anxiety and concern' has exceeded the norm'"); United States v. Larson, 627 F.3d 1198, 1210 (10th Cir. 2010) (holding that defendant's "generalized and conclusory references to the anxiety and distress that purportedly are intrinsic to incarceration are not sufficient to demonstrate particularized prejudice").  When asked at the

_____

record establishes negative aspects of her confinement conditions, a number of considerations weigh against concluding that the conditions were 'oppressive' under Article 10.  First, Appellant did not raise any kind of formal or informal complaint about her confinement conditions or otherwise request a change in conditions during the period at issue . . . .") (citation omitted).

Article 39(a) hearing how his confinement under these conditions made him feel, Wilson responded:

> I feel very depressed, sir, and agitated, and I'm kind of nervous at times; then at times, I'm not. It's just -- it just goes with the day. I haven't had a happy day in there. I know it's jail, but I haven't had a decent day in there since I've been in there, sir.

We agree with the military judge's conclusion that any anxiety or concern Wilson suffered was the result of normal incidents of confinement.

## Balancing the Barker Factors

"Once it is determined that balancing is necessary, none of the four factors has any talismanic power. Rather, 'we must still weigh all the factors collectively before deciding whether a defendant's right to a speedy trial has been violated.'" United States v. Dowdell, 595 F.3d 50, 60 (1st Cir. 2010) (quoting United States v. Colombo, 852 F.2d 19, 23 (1st Cir. 1988)); Barker, 407 U.S. at 533.

The record reflects 115 days of delay attributable to the Government. While the Government explained much of the delay, there were several periods of unexplained or unjustified delay. Those delays appear to be the result of inattention and neglect and although they weigh against the Government, they do not weigh as heavily against the Government as they would if there was a deliberate effort to delay the case. While Wilson filed a demand for a speedy trial, he waited until he had been confined

19

for 119 days to do so.  Finally, Wilson failed to establish that the conditions of his confinement or any anxiety or concern that he suffered rose to the level of Article 10 prejudice.  Based on the military judge's findings of fact and after balancing the Barker factors de novo, we conclude that Wilson's Article 10 right to a speedy trial was not violated.

Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.

BAKER, Chief Judge, which COX, Senior Judge, joins (dissenting):

I respectfully dissent for two reasons. First, there remain significant ambiguities and gaps in this Court's legal framework for addressing Article 10, UCMJ, 10 U.S.C. § 810 (2006), claims. In light of the consolidation of military detention facilities and the corresponding practice of detaining military members in civilian facilities before trial -- facilities that may or may not adhere to Department of Defense standards -- reducing the gaps in our legal framework takes on added urgency and importance. Thus, clarifying the jurisprudence surrounding speedy trial rights would not only determine the outcome of this case, but that of future cases.

Second, the military judge and the majority conclude that Wilson did not suffer oppressive pretrial incarceration when he was subject to repeated racial taunts and slurs while confined as the sole African American in a local jail with nineteen other persons, many of them self-avowed "skinheads" and neo-Nazis. The military judge found that this was a "normal incident[] of confinement." The majority concludes that this was "racially insensitive," but not prejudicial. I disagree across the board. Racism and implied threats are not normal incidents of _military_ confinement. They are the mark of oppressive and prejudicial pretrial _military_ confinement and this Court should say so.

I.

This Court reviews Article 10, UCMJ, speedy trial claims using the four-factor framework the Supreme Court developed to determine whether Sixth Amendment speedy trial rights were violated. United States v. Mizgala, 61 M.J. 122, 129 (adopting the four-part test in Barker v. Wingo, 407 U.S. 514, 530 (1972)). However, this Court has further held that "Article 10 . . . imposes [on the Government] a more stringent speedy-trial standard than that of the Sixth Amendment." United States v. Kossman, 38 M.J. 258, 259 (C.M.A. 1993). But the Court has never explained how "a more stringent speedy-trial standard" differs from the Sixth Amendment's speedy trial standard under Barker. To the contrary, the Court appears to have applied the Barker factors without deviation or distinction from Sixth Amendment precedent.

Further, this Court has consistently stated that the government must proceed with "reasonable diligence." See, e.g., Mizgala, 61 M.J. at 127 (quoting United States v. Tibbs, 15 C.M.A. 350, 353, 35 C.M.R. 322, 325 (1965) (internal quotation marks omitted). However, the Court has not articulated how and whether this standard is different than the Barker standard. And it has treated this standard as a determinative factor, when in fact it should only apply to the second of the Barker factors. Moreover, in this case, the military judge found that

2

the Government did not move with reasonable diligence during several notable instances. For example, he found that "the [t]imeline reflects an Investigating Officer who is not committed to his duties, as well as a Trial Counsel, a Chief of Justice, and Appointing Authority who are inattentive to the timely processing of the Article 32 Investigation." Given these findings, it is not clear to me why it is not an abuse of discretion for a military judge to nonetheless conclude that the Government's actions, as a whole, "reflect[ed] reasonable diligence."

Finally, if "reasonable diligence" is the standard and Article 10, UCMJ, is distinct from Rule for Courts-Martial (R.C.M.) 707's 120-day speedy trial threshold, it remains unclear and unexplained why the military judge and this Court in this and other cases spend so much time dissecting the number of days that are attributable to each party and why all the parties treat the 120-day threshold as critical.[1] If reasonable diligence is the standard based on some overall assessment of progress, it should not matter just how many days are attributable to each party.

---

[1] Thus, while the majority is correct that Appellant has not raised the R.C.M. 707 issue before this Court, the analysis below as well as by this Court begs the question as to why so much focus is placed on counting attributable days using R.C.M. 707 criteria.

3

In my view, this case falls squarely within the gap that exists between the Sixth Amendment and whatever it means to have a heightened standard of review for the purposes of Article 10, UCMJ. For that reason, I respectfully dissent.

## II.

I also dissent because I disagree with the majority's prejudice analysis.

The military judge found that Wilson was confined in "a racially tense environment," which was nonetheless reflective of "the normal incidents of confinement" and thus not "oppressive pretrial incarceration." This conclusion reflects an abuse of discretion.

The facts reflect more than a racially tense environment. Wilson gave extensive testimony about his prison experience as the only African American confined with nineteen other inmates, many of whom were self-avowed "skinheads" who displayed swastika tattoos and other "white power" symbols. Those inmates called Wilson "nigger" and "monkey," and referenced "old slavery times." While Wilson did not testify that he feared physical violence, he did complain to his lawyer and to a civilian corrections officer. Most significantly, he requested to be transferred to protective custody. When told that protective custody was unavailable, he requested to be transferred to solitary confinement. That request was denied.

4

Such facts do not constitute normal incidents of <u>military</u> pretrial confinement. They represent oppressive pretrial confinement. Nonetheless, the majority affirms the military judge's conclusions, stating that what occurred is "racially insensitive," but not oppressive confinement. I disagree: the facts suggest much more than mere insensitivity. Moreover, the majority's prejudice analysis incorrectly hinges on the fact that Wilson did not complain to his chain of command and did not seek Article 13, UCMJ, 10 U.S.C. § 813 (2006), sentencing credit.

My response is twofold. First, the record is unclear whether Wilson's command met its obligation to visit him in confinement. At trial, Wilson said that his chain of command visited him three times during the early portion of his pretrial confinement, but did not continue to visit him in the last few months of his confinement. The military judge's findings are unclear on this point. The findings refer to "a chain of command which has not visited him in compliance with the Fort Drum regulation." However, this statement appears in a sentence listing the "issues of alleged prejudice stemming from the delay" that "[t]he Accused points to." Thus, the findings leave this "fact" unresolved. However, it is noteworthy that the stipulated timeline makes no reference to command visits and neither do the Government's filings with the military judge.

Most significantly, it is uncontested that Wilson requested placement in solitary confinement to escape his conditions.

The majority further points to the absence of claims under R.C.M. 305 and Article 13, UCMJ, to support the conclusion that Wilson's conditions were not "oppressive" under Article 10, UCMJ. This argument presumes that the ordinary instinct for seeking relief from a threatening racist environment is to seek sentencing credit rather than immediate escape from one's environment. A lawyer might think like that. But it is unreasonable to assume that an ordinary defendant would.

As a criminal appellate court, this Court must often subscribe to the legal fiction that lawyer and defendant are one and the same entity. This legal fiction, however necessary in most instances of our jurisprudence, must occasionally give way to common sense when conflating the two actors unfairly ascribes to the defendant pretrial actions or omissions that do not accurately reflect the defendant's own efforts to advance his cause.[2]

This is an instance where the legal fiction is not apt. Here, Wilson sought placement in solitary confinement and complained to civilian authorities about his treatment by the

---

[2] In contrast, in many courtroom settings, a defendant and his lawyer are properly conceived as one entity because failures of a lawyer at trial can generally be remedied by ineffective assistance of counsel claims.

other inmates.  To me, this is enough indication that Wilson believed that racially motivated violence against him was highly likely -- and that his pretrial confinement conditions were oppressive under military standards.  The absence of Article 13, UCMJ, and R.C.M. 305 claims has less to do with whether Wilson's confinement was "oppressive" than the quality of his lawyer's decision making.  In addition, as the majority notes, raising claims under Article 13, UCMJ, and R.C.M. 305 are not necessary components of an Article 10, UCMJ, claim.

It is rare for this Court to find a speedy trial violation. In my view, this case meets the standard.  "Prejudice" can arise from oppressive pretrial confinement.  Barker, 407 U.S. at 532. While Wilson's confinement did not violate the Sixth Amendment's speedy trial standard, it did violate Article 10's standard for pretrial military confinement.

For these reasons, I respectfully dissent.

United States v. Wilson, No. 13-0096/AR

    Cox, Senior Judge, (dissenting):

    I join Chief Judge Baker's dissent.  However, I do not
believe he has gone far enough in attempting to settle what he
describes as the Court never having "explained how 'a more
stringent speedy-trial standard' [under Article 10, Uniform Code
of Military Justice (UCMJ), 10 U.S.C. § 810 (2006),] differs
from the Sixth Amendment's speedy trial standard under Barker
[v. Wingo, 407 U.S. 514 (1972)]."  I would simply hold that Rule
for Courts-Martial (R.C.M.) 707 creates a "more stringent speedy
trial standard" for meeting the "reasonable diligence" factor.[1]
United States v. Cossio, 64 M.J. 254, 256 (C.A.A.F. 2007).

    I am perplexed, if not totally confused, as to how any
Article 10, UCMJ, appeal can be litigated without reference to
or analysis of R.C.M. 707.  Certainly it is understandable why
Appellant might have staked the outcome of his case on the
intolerable conditions of pretrial confinement, as described by
the Chief Judge in his dissent, and the lack of "immediate
steps" to either try him or dismiss the charges.  But the more
critical question in this case to me is whether or not the

---

[1] I do not know how I can make my position clearer.  If R.C.M.
707 is violated, then the Government as a matter of law has not
taken the "immediate steps" required by Article 10, UCMJ.  For
me, there is a clear relationship between R.C.M. 707 and the
concept of "reasonable diligence."  However, Article 10 can be
violated even if R.C.M. 707 has been followed.  That is why I
join Chief Judge Baker.  But I also am of the opinion that the
Government did not meet the speedy trial rule set forth in
R.C.M. 707.

Government proceeded with "reasonable diligence."  And the two issues, intolerable confinement and delay, are certainly interrelated.

In United States v. Kossman, 38 M.J. 258, 261 (C.M.A. 1993), this Court overruled, notwithstanding strong dissents of two of the judges, United States v. Burton, 21 C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971), a case in which this Court had established a rebuttable presumption that delay was unreasonable if it exceeded three months.  The rationale for overruling Burton was that the landscape had changed in the twenty-plus years since Burton was decided and that the President had created a speedy trial rule that answered the question as to how much time was reasonable for the government to bring an accused to trial.  Kossman, 38 M.J. at 260.  Thus we now have a rule setting forth what would be the ordinary standard for "reasonable diligence."  However, we noted in Kossman that neither the President nor this Court could provide for a rule which avoided the congressional mandate set forth in Article 10. Id. at 260-61.  Thus, there may be circumstances where a military accused is brought to trial within 120 days of the preferral of charges (R.C.M. 707(a)(1)) or the imposition of restraint (R.C.M. 707(a)(2)), yet the mandate to take "immediate steps" to "try him or to dismiss the charges and release him" may have been violated.  Article 10, UCMJ.  And while I agree

2

with Chief Judge Baker that Article 10, UCMJ, was violated in this case for the reasons he sets forth, I would have been just as happy to conclude that Article 10, UCMJ, was violated because R.C.M. 707 was also violated.

On Day One every person knows when Day 120 is. As a matter of law, if the government does not bring an accused to trial within 120 days, then it must dismiss the charges and release the accused. R.C.M. 707(a), (d). That is a presidential executive order that sets a standard for "reasonable diligence." The President provided reasonable alternatives to dismissal of charges with prejudice, i.e., release the accused from pretrial confinement or dismiss the charges with or without prejudice. R.C.M. 707(b)(3)(B), (d)(1). Granted, there are circumstances where an accused cannot be brought to trial within the 120 days and the President has provided for those days to be excluded from the count. R.C.M. 707(c).

I would attribute no delay to the defense unless the defense requests the delay or engages in some sharp practice that causes a delay with the view of triggering the speedy trial rule. I would attribute no delay to the absence of a military judge unless it is occasioned by military exigencies or circumstances which are predetermined and made a matter of record at the time they take place and notice is given to the

3

accused so that he can be heard on the question of delay at that time.

The Sixth Amendment provides no remedy for violation of the right to a speedy trial. Article 10, UCMJ, R.C.M. 707, and the Speedy Trial Act of 1974, Pub. L. No. 93-619, 88 Stat. 2076, 2079-80 (codified as amended at 18 U.S.C. § 3162), do provide for remedies. Appellate courts should not be on a search and rescue mission to save the government from delay regardless. I recognize that there are unusual cases (such as death penalty cases) where it is impossible to get the case to trial in 120 days, but those exceptions can be made through a contemporaneous motion setting forth the reason for the delay and giving the accused an opportunity to be heard as to why that is a frivolous or unworthy reason for delay.[2] Our military justice system under the UCMJ is now over sixty-two years old. It is ridiculous for military judges to have to look backwards and try to save the government from its lack of attention to the "immediate steps" Congress mandated that it take to get a military accused either to trial or out of confinement.

---

[2] I recognize that we do not have standing military courts-martial where motions for continuances can be filed and heard but there are avenues available to both the government and the accused to get these matters on the record, such as a motion to the convening authority to either release the accused or bring him to trial or a motion to the government to delay the trial while a plea bargain is being negotiated. My point is that these should be made a matter of contemporaneous importance not a recreation some 179 days down the road.