BAKER, Chief Judge,
which COX, Senior Judge, joins
(dissenting):
I respectfully dissent for two reasons. First, there remain significant ambiguities and gaps in this Court’s legal framework for addressing Article 10, UCMJ, 10 U.S.C. § 810 (2006), claims. In light of the consolidation of military detention facilities and the corresponding practice of detaining military members in civilian facilities before trial— facilities that may or may not adhere to Department of Defense standards — reducing the gaps in our legal framework takes on added urgency and importance. Thus, clarifying the jurisprudence surrounding speedy trial rights would not only determine the outcome of this case, but that of future cases.
Second, the military judge and the majority conclude that Wilson did not suffer oppressive pretrial incarceration when he was subject to repeated racial taunts and slurs while confined as the sole African American in a local jail with nineteen other persons, many of them self-avowed “skinheads” and neo-Nazis. The military judge found that this was a “normal ineident[] of confinement.” The majority concludes that this was “racially insensitive,” but not prejudicial. I disagree across the board. Racism and implied threats are not normal incidents of military confinement. They are the mark of oppressive and prejudicial pretrial military confinement and this Court should say so.
I.
This Court reviews Article 10, UCMJ, speedy trial claims using the four-factor framework the Supreme Court developed to determine whether Sixth Amendment speedy trial rights were violated. United States v. Mizgala, 61 M.J. 122, 129 (adopting the four-part test in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). However, this Court has further held that “Article 10 ... imposes [on the Government] a more stringent speedy-trial standard than that of the Sixth Amendment.” United States v. Kossman, 38 M.J. 258, 259 (C.M.A.1993). But the Court has never explained how “a more stringent speedy-trial standard” differs from the Sixth Amendment’s speedy trial standard under Barker. To the contrary, the Court appears to have applied the Barker factors without deviation or distinction from Sixth Amendment precedent.
Further, this Court has consistently stated that the government must proceed with “reasonable diligence.” See, e.g., Mizgala, 61 M.J. at 127 (quoting United States v. Tibbs, 15 C.M.A. 350, 353, 35 C.M.R. 322, 325 (1965) (internal quotation marks omitted)). However, the Court has not articulated how and whether this standard is different than the Barker standard. And it has treated this standard as a determinative factor, when in fact it should only apply to the second of the Barker factors. Moreover, in this case, the military judge found that the Government *356 did not move with reasonable diligence during several notable instances. For example, he found that “the [t]imeline reflects an Investigating Officer who is not committed to his duties, as well as a Trial Counsel, a Chief of Justice, and Appointing Authority who are inattentive to the timely processing of the Article 32 Investigation.” Given these findings, it is not clear to me why it is not an abuse of discretion for a military judge to nonetheless conclude that the Government’s actions, as a whole, “refleet[ed] reasonable diligence.”
Finally, if “reasonable diligence” is the standard and Article 10, UCMJ, is distinct from Rule for Courts-Martial (R.C.M.) 707’s 120-day speedy trial threshold, it remains unclear and unexplained why the military judge and this Court in this and other cases spend so much time dissecting the number of days that are attributable to each party and why all the parties treat the 120-day threshold as critical.[1] If reasonable diligence is the standard based on some overall assessment of progress, it should not matter just how many days are attributable to each party.
In my view, this ease falls squarely within the gap that exists between the Sixth Amendment and whatever it means to have a heightened standard of review for the purposes of Article 10, UCMJ. For that reason, I respectfully dissent.
II.
I also dissent because I disagree with the majority’s prejudice analysis.
The military judge found that Wilson was confined in “a racially tense environment,” which was nonetheless reflective of “the normal incidents of confinement” and thus not “oppressive pretrial incarceration.” This conclusion reflects an abuse of discretion.
The facts reflect more than a racially tense environment. Wilson gave extensive testimony about his prison experience as the only African American confined with nineteen other inmates, many of whom were self-avowed “skinheads” who displayed swastika tattoos and other “white power” symbols. Those inmates called Wilson “nigger” and “monkey,” and referenced “old slavery times.” While Wilson did not testify that he feared physical violence, he did complain to his lawyer and to a civilian corrections officer. Most significantly, he requested to be transferred to protective custody. When told that protective custody was unavailable, he requested to be transferred to solitary confinement. That request was denied.
Such facts do not constitute normal incidents of military pretrial confinement. They represent oppressive pretrial confinement. Nonetheless, the majority affirms the military judge’s conclusions, stating that what occurred is “racially insensitive,” but not oppressive confinement. I disagree: the facts suggest much more than mere insensitivity. Moreover, the majority’s prejudice analysis incorrectly hinges on the fact that Wilson did not complain to his chain of command and did not seek Article 13, UCMJ, 10 U.S.C. § 813 (2006), sentencing credit.
My response is twofold. First, the record is unclear whether Wilson’s command met its obligation to visit him in confinement. At trial, Wilson said that his chain of command visited him three times during the early portion of his pretrial confinement, but did not continue to visit him in the last few months of his confinement. The military judge’s findings are unclear on this point. The findings refer to “a chain of command which has not visited him in compliance with the Fort Drum regulation.” However, this statement appears in a sentence listing the “issues of alleged prejudice stemming from the delay” that “[t]he Accused points to.” Thus, the findings leave this “fact” unresolved. However, it is noteworthy that the stipulated timeline makes no reference to command visits and neither do the Government’s filings with the military judge. Most significantly, it is uncontested that Wilson requested placement in solitary confinement to escape his conditions.
*357 The majority further points to the absence of claims under R.C.M. 305 and Article 13, UCMJ, to support the conclusion that Wilson’s conditions were not “oppressive” under Article 10, UCMJ. This argument presumes that the ordinary instinct for seeking relief from a threatening racist environment is to seek sentencing credit rather than immediate escape from one’s environment. A lawyer might think like that. But it is unreasonable to assume that an ordinary defendant would.
As a criminal appellate court, this Court must often subscribe to the legal fiction that lawyer and defendant are one and the same entity. This legal fiction, however necessary in most instances of our jurisprudence, must occasionally give way to common sense when conflating the two actors unfairly ascribes to the defendant pretrial actions or omissions that do not accurately reflect the defendant’s own efforts to advance his cause.[2]
This is an instance where the legal fiction is not apt. Here, Wilson sought placement in solitary confinement and complained to civilian authorities about his treatment by the other inmates. To me, this is enough indication that Wilson believed that racially motivated violence against him was highly likely — and that his pretrial confinement conditions were oppressive under military standards. The absence of Article 13, UCMJ, and R.C.M. 305 claims has less to do with whether Wilson’s confinement was “oppressive” than the quality of his lawyer’s decision making. In addition, as the majority notes, raising claims under Article 13, UCMJ, and R.C.M. 305 are not necessary components of an Article 10, UCMJ, claim.
It is rare for this Court to find a speedy trial violation. In my view, this case meets the standard. “Prejudice” can arise from oppressive pretrial confinement. Barker, 407 U.S. at 532, 92 S.Ct. 2182. While Wilson’s confinement did not violate the Sixth Amendment’s speedy trial standard, it did violate Article 10’s standard for pretrial military confinement.
For these reasons, I respectfully dissent.

. Thus, while the majority is correct that Appellant has not raised the R.C.M. 707 issue before this Court, the analysis below as well as by this Court begs the question as to why so much focus is placed on counting attributable days using R.C.M. 707 criteria.

. In contrast, in many courtroom settings, a defendant and his lawyer are properly conceived as one entity because failures of a lawyer at trial can generally be remedied by ineffective assistance of counsel claims.