*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Jose A. RIVERA**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202000111**

Decided: 19 August 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Jeffrey V. Munoz

Sentence adjudged 25 November 2019 by a special court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 60 days, forfeiture of $1,120 per month for 2 months, and a bad-conduct discharge.

For Appellant:
*Captain Kimberly D. Hinson, JAGC, USN*

For Appellee:
*Lieutenant Gabriel K. Bradley, JAGC, USN*
*Lieutenant Kevin G. Edwards II, JAGC, USN*

Senior Judge STEPHENS delivered the opinion of the Court, in which Chief Judge MONAHAN and Judge DEERWESTER joined.

————————————————

## PUBLISHED OPINION OF THE COURT

————————————————

STEPHENS, Senior Judge:

Appellant was convicted, consistent with his pleas, of willful disobedience of a lawful order from his superior commissioned officer, wrongful use of cocaine, and wrongful introduction of cocaine onto an installation used by the armed forces in violation of Articles 90 and 112a, Uniform Code of Military Justice [UCMJ].[1]

Appellant's sole assignment of error asserts the Government violated his due process rights by a delay in post-trial processing. He requests we set aside the bad-conduct discharge as a remedy. Having carefully considered the record of trial and the parties' submissions, we are convinced the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant remains.[2]

## I. BACKGROUND

### Appellant's Case was Delayed Between Announcement of Sentence and Docketing with This Court

On 25 November 2019, Appellant was arraigned and pleaded guilty at a special court-martial comprised of a military judge sitting alone. After accepting Appellant's pleas and finding him guilty, the military judge admitted eight Prosecution exhibits, including a stipulation of fact and a statement made by Appellant to the Criminal Investigative Division admitting to cocaine use. Two Defense exhibits were admitted. Appellant called four telephonic witnesses. Two of the witnesses were former Marines who served with Appellant; the other two were his mother and sister. The testimony was brief with limited cross-examination. Appellant also gave an unsworn statement. The military judge heard argument on sentencing, deliberated, and after a brief recess announced the sentence. The entire proceeding took just under four hours. The trial transcript was only 131 pages.

---

[1] 10 U.S.C. §§ 890, 912a.

[2] Articles 59(a) & 66(c), UCMJ.

Just over two months later, the court reporter certified the transcript. Appellant did not submit any clemency matters, so 112 days after the guilty plea, the convening authority "took action" when he wrote "I take no action on the findings or sentence in this case." The military judge, 15 days after the convening authority's action [CAA], and 127 days after the guilty plea, completed the Entry of Judgment [EOJ]. The record of trial [ROT] amounted to about 230 pages of documents, including the trial transcript.

A few days later, on 3 April 2020, 130 days after the guilty plea, another court reporter certified that the ROT contained all the required items under Rule for Courts-Martial [R.C.M.] 1112(f), and that the transcript accurately reflected the pleas, findings, and sentence. Finally, on 15 April 2020, the certified ROT was forwarded from Camp Pendleton, California, to the Administrative Support Division of the Office of the Judge Advocate General [Code 40]. Once Code 40—located at the Washington Navy Yard in the same building as this Court—had the certified ROT, it was sent to this Court and docketed. The docketing occurred 151 days after the announcement of sentence. Thus, the undisputed timeline of the post-trial processing:

| | |
|---|---|
| 25 November 2019 | Announcement of Sentence at Trial |
| 16 March 2020 | Convening Authority's Action (112 days after announcement of sentence) |
| 31 March 2020 | Entry of Judgment (127 days after announcement of sentence) |
| 3 April 2020 | Certification of ROT (130 days after announcement of sentence) |
| 15 April 2020 | ROT Forwarded to Code 40 (142 days after announcement of sentence)[3] |

---

[3] This information is not readily apparent in the paper or electronic ROT. However, pursuant to Article 140a, UCMJ, and Dep't of Def. Dir. 5145.01, *General Counsel of the Department of Defense (GC DoD)*, para. 5. (Ch. 2, Jan. 30, 2015), the General Counsel of the Department of Defense prescribed uniform standards and criteria for the military justice system. *See* Dep't of Def. Gen. Couns., Memo. for Sec'ys of the Mil. Dep'ts, *Uniform Standards and Criteria Required by Article 140a, Uniform Code of Military Justice (UCMJ)*, (Dec. 17, 2018). One of the standards is the requirement for each military service to maintain and operate a military justice case processing and management system. One of the mandatory data fields to record is the date the certified ROT is forwarded to the appropriate reviewing authority. *Id.*, app. A., para. 120. For the Department of the Navy, the military justice case processing and management system is currently the interim "Wolverine" database, where the date the ROT in this case was forwarded to Code 40 is recorded. We consider such

24 April 2020   ROT Docketed with this Court
(151 days after announcement of sentence;
39 days after CAA;
24 days after EOJ;
21 days after certification of ROT;
9 days after forwarding of ROT).

## II. DISCUSSION

### A. Standard of Review and the Law

We review speedy post-trial review claims de novo.[4] In *United States v. Moreno*,[5] the Court of Appeals for the Armed Forces [CAAF] held that "due process entitles convicted service members to a timely review and appeal of court-martial convictions."[6] *Moreno* provided relief to a Marine whose post-trial processing and appeal took 1,688 days (four years, seven months, and 14 days) from the day his sentence was announced. Indeed, he was likely released from confinement on his six-year sentence before this Court even affirmed his conviction—a conviction CAAF later set aside owing to a prejudicial legal error during member selection. In *Moreno*, it took about seven months for the military judge to authenticate the 746-page ROT, and an additional nine months for the convening authority to take action. After that, it took over two more months to get the case docketed with this Court. Once with this Court, owing largely to "other case load commitments" from Moreno's detailed appellate defense counsel, this Court granted a total of 18 enlargements of time for his Brief and Assignments of Error to be filed. The total time granted was just shy of *two years* (702 days). The Government filed its Answer about six months later. Once both parties' pleadings were filed, this Court issued its opinion about six-and-a-half months later. CAAF held that this timeline demonstrated unacceptable delay and violated Moreno's due process rights.

---

information an electronic attachment for appellate review, similar to the type of information listed in R.C.M. 1112(f)(1). *See also* R.C.M. 1112(f)(1) Discussion ("The record of trial and attachments may include electronic versions of any matters."). For a discussion of when attachments (previously, "matters attached to the record" and earlier, "allied papers") may properly be considered on appeal, see *United States v. Jessie*, 79 M.J. 437, 440–41 (C.A.A.F. 2020).

[4] *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006).

[5] *Id.*

[6] *Id.* at 132 (citing *Toohey v. United States*, 60 M.J. 100, 101 (C.A.A.F. 2004)).

CAAF then judicially established three post-trial deadlines that, if not met, would trigger analysis of speedy trial and post-trial rights as set forth in the Supreme Court's decision in *Barker v. Wingo*.[7] The CAA—which was then the terminal "action" in the post-trial processing—must be taken within 120 days of the completion of trial (*Moreno I*); the ROT must be docketed by the service court of criminal appeals within 30 days of the CAA (*Moreno II*); and appellate review must be completed and a decision issued within 18 months of docketing the case at the court of criminal appeals (*Moreno III*).[8] Since then, this Court has virtually eliminated *Moreno III* violations and the Navy and Marine Corps have done likewise with *Moreno I and II* violations.[9]

**B. The Military Justice Act of 2016**

When Congress passed the Military Justice Act of 2016 [MJA 16],[10] it altered, among other things, the post-trial process. Specifically, the terminal benchmark for post-trial processing at the trial level was no longer the CAA. There was also a newly-created EOJ process, by which the military judge summarizes each charge and specification, the pleas, findings, sentence, and other basic information about the trial. The EOJ, under R.C.M. 1111(a)(2) "terminates the trial proceedings and initiates the appellate process." Quickly, the question arose whether to measure the end of the *Moreno I* timeline from the date of the CAA or the EOJ or some other date? Another question was whether to combine the *Moreno I* and *Moreno II* timelines and just measure the period between announcement of sentence and docketing with a service court of criminal appeals as one event, or two segmented events. A final question was whether CAAF's *Moreno* timelines still mattered or had they been superseded by MJA 16. The final question is more easily answered, as we now hold that *Moreno I* and *Moreno II* were both superseded by MJA 16, but the other questions were not quite as easily answered.

---

[7] 407 U.S. 514 (1972).

[8] 63 M.J. at 142.

[9] According to the last three Reports to Congress (FY18, FY19, and FY20) from the Services, this Court has had only four *Moreno III* violations out of 868 cases reviewed. There have only been 24 *Moreno I* and 4 *Moreno II* violations, respectively. Reports available at Joint Service Committee on Military Justice website: https:/jsc.defense .gov/Annual-Reports/ . This change is also owed to the personnel re-organization, case assignment process, and leadership of "Code 45," the Navy and Marine Corps Appellate Defense Division.

[10] Pub. L. No. 114-328, § 5324, 130 Stat. 2000, 2927 (codified at 10 U.S.C. § 860c (2018)).

Our sister court, the Air Force Court of Criminal Appeals [AFCCA], held that it would "apply the aggregate standard threshold [from] *Moreno*; 150 days from the day Appellant was sentenced to docketing with this court."[11] This neatly combined *Moreno I* and *Moreno II*. AFCCA predicated this on the observation that the new MJA 16 post-trial procedures, as laid out in R.C.M. 1109–1112, were no longer as clear for determining what constituted unreasonable delay prior to docketing with the appellate court. In another opinion,[12] AFFCA noted that an Air Force Instruction required a "completed [ROT] within 120 days of sentence . . . and forwarding of the [ROT] to the office for processing appellate review within 14 days of completion."[13] In that case it was, understandably, unclear to AFCCA whether the relevant measurement was the 38 days between EOJ and docketing or the 45 days between CAA and docketing. And when the entire time period between conclusion of trial and docketing was a mere 58 days—far short of the aggregate 150 days for a combined *Moreno I* and *Moreno II* timeline— the court found it unnecessary to analyze a separate *Moreno II* violation.

Another sister court, the Army Court of Criminal Appeals [ACCA], followed AFCCA's approach. In *United States v. Brown*,[14] ACCA "collaps[ed] [*Moreno I* and *Moreno II*] into a consolidated 150-day period."[15] As ACCA explained, "this focuses less on the nuts and bolts of when specific events occur within the larger post-trial process by establishing definitive starting and end points, specifically final adjournment and docketing with this court."[16]

On 6 September 2019—more than two months prior to announcement of sentence in this case—the Navy Judge Advocate General [JAG] issued an Instruction on Post-Trial Processing for the Navy and Marine Corps.[17] With respect to timelines, the Instruction provides:

---

[11] *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020).

[12] *United States v. Moody-Nookum*, 2019 CCA LEXIS 521 (A.F. Ct. Crim. App. Dec. 19, 2019) (unpublished).

[13] *Id.* at *5 (citing Air Force Instr. 51-201, *Administration of Military Justice*, para. 20.2.2.–.3 (Jan. 18, 2019)).

[14] 81 M.J. 507 (Army Ct. Crim. App. 2021).

[15] *Id.*, 81 M.J. at 510.

[16] *Id.*

[17] Dep't of the Navy, Judge Advocate General / Cmdr Navy Legal Service Cmd Instr. 5814.1D, *Post-Trial Processing*, (Sep. 6, 2019).

For all courts-martial resulting in appellate review under Article 66(b)(3), UCMJ, (automatic appeals) the government must ensure: (1) the certified ROT together with all required attachments is forwarded as soon as practicable after the Entry of Judgment (EOJ) to OJAG Administrative Support Division (Code 40), and in all cases the certified ROT and all required attachments must be completed and forwarded for appellate review within 120 days of the announcement of sentence (Post-Trial I), and (2) the case is docketed at the Navy-Marine Corps Court of Criminal Appeals (NMCCA) within 30 days after forwarding (Post-Trial II). The NMCCA will then issue an opinion, ordinarily within 18 months after the case is docketed (Post-Trial III).[18]

This departs from the Army and Air Force's judicial consolidation of *Moreno I* and *Moreno II* for purposes of *Barker v. Wingo* analysis and retains the tripartite nature of *Moreno.* Further, it replaces the CAA as the terminal *Moreno I* event with the forwarding of the certified ROT to this Court. However, the Department of the Navy instruction *is* similar to the Department of the Air Force's approach in its instruction, in establishing various metrics, such as the time to complete the ROT, that do not trigger a due process analysis if not met.

## C. There is No Prejudice in This One-Day Delay in Post-Trial Processing

Only *Moreno I* and *Moreno II* are at issue here, or what the JAG Instruction now captions as "Post-Trial I" and "Post-Trial II." Appellant argues the EOJ has replaced the CAA as the terminal event for *Moreno I* [Post-Trial I] calculation and thus, the 127 days between trial and EOJ amounted to a violation.[19] But *Moreno I* and *Moreno II* were superseded by statute and the JAG Instruction now dictates administrative deadlines for Post-Trial I and Post-Trial II. The JAG Instruction makes the forwarding of the certified ROT, and not the CAA and not the EOJ, the terminal event for the Post-Trial I phase. Here, that amounted to 142 days, which exceeded the JAG Instruction's 120-day Post-Trial I benchmark by 22 days. And the Post-Trial II timeline—the time between forwarding of the ROT and docketing with this Court—was only nine days, well below the Post-Trial II metric of 30 days. So, while there was a 22-day "violation" of the JAG Instruction for the Post-Trial I timeline, there was no corresponding violation of the JAG Instruction's

---

[18] *Id.* at para. 4(a)(1).

[19] In the alternative, Appellant argues that if the CAA was the terminal event for *Moreno I*, then the *Moreno II* timeline suffered from a nine-day delay.

timeline for Post-Trial II. Combined, the total Post-Trial I and Post-Trial II timeline was 151 days.

The JAG Instruction says these administrative tasks "shall" be completed within the prescribed timelines, but does not list, or even suggest, a judicial remedy. We now hold that we will only test for prejudice when the total Post-Trial I and Post-Trial II timeline—the time between announcement of sentence and docketing with this Court—exceeds 150 days. Adopting the logic and reasoning of our sister courts, we will test for prejudice under the familiar test from *Barker v. Wingo*. This allows the JAG to measure and monitor the administrative tasks necessary for efficient and timely post-trial processing, while allowing this Court to enter the field only when there is a bona fide possibility of a violation of an appellant's due process right to speedy post-trial processing. In addition, we further hold that the remaining *Moreno III* time standard—the time between docketing with this Court and issuing our opinion—is untouched by MJA 16. We will continue to apply the *Moreno III* "presumption of unreasonable delay where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the court of Criminal Appeals,"[20] particularly as it pertains to prejudice analysis.

Because the Government did not docket this case within 150 days of the announcement of the sentence, we test for prejudice under *Barker v. Wingo*. The four factors under *Barker*, are (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice.[21] We recognize that none of the four factors has any "talismanic power. Rather, we must . . . weigh all the factors collectively before deciding whether [an accused's] right to a speedy [post-trial processing] has been violated."[22]

The one-day delay in the aggregate Post-Trial I and Post-Trial II timeline is *de minimus*. The Government gives no reasons for the delay. Appellant concedes he did not assert his right to timely review.[23] He was unconfined and on appellate leave during almost all of his post-trial processing. Neither he, his trial defense counsel, nor his eventual appellate defense counsel had reason to assert his right to timely review of his case during the post-trial processing period because their understandable presumption would have

---

[20] *Moreno*, 63 M.J. at 142.

[21] *Id.* at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

[22] *United States v. Wilson*, 72 M.J. 347, 354-55 (C.A.A.F. 2013).

[23] Appellant's Br. of June 25, 2020, at 6.

been that his case was being processed in a normal and timely fashion and, more importantly, he was not suffering any prejudice during the time his case was being processed.

Finally, "Prejudice . . . should be assessed in the light of the interests of [accuseds] which the speedy [post-trial processing] right was designed to protect."[24] We, therefore, examine the question of prejudice in light of three important interests the Supreme Court identified in *Barker*: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern; and (3) to limit the possibility that an accused's post-trial review will be impaired.[25] "Of these, the most serious is the last, because the inability of [an accused] to adequately to prepare his case skews the fairness of the entire system."[26]

Appellant concedes, and we agree, that only the second *Barker* factor might apply.[27]

Appellant's claim that he suffered prejudice due to anxiety and concern is supported solely by cursory statements in his briefs: "[he] had no information about his case situation and as a drug-offender his access to government benefits is severely limited under Texas law,"[28] and upon commencement of appellate leave after the CAA, "[t]rade school was no longer available to him."[29] We find no evidence in the record supporting that these claims of prejudice are due to the aggregate post-trial processing violation of one day. Appellant did not even realize his case was delayed by a day between announcement of sentence and docketing with this Court. Moreover, Appellant's mere assertions of prejudice seem to be tied more to the collateral consequences of his guilty plea—which would not constitute grounds for relief—than to any delay in his post-trial processing. The one-day post-trial processing violation presented no appreciable impediment to Appellant's ability to mount an appeal to this Court. Therefore, in balancing the *Barker* factors, we conclude Appellant was not denied his right to speedy post-trial processing.

---

[24] *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005) (quoting *Barker*, 407 U.S. at 532) (internal quotations omitted).

[25] *Barker*, 407 U.S. at 532.

[26] *Mizgala*, 61 M.J. at 129 (quoting *Id.*).

[27] Appellant's Br. of June 25, 2020, at 7.

[28] *Id.*

[29] Appellant's Reply Br. of July 29, 2020, at 4.

Finally, Appellant has not shown prejudice from the delay, and the delay itself is not so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system."[30]

## III. CONCLUSION

After careful consideration of Appellant's assigned error, the record of trial, and the parties' submissions, we conclude the findings and sentence are correct in law and fact. Accordingly, the findings and sentence are **AFFIRMED**.

Chief Judge MONAHAN and Judge DEERWESTER Concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[30] *Toohey*, 63 M.J. at 362.