# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant ALEKSEY N. STAROVOYTOV
### United States Air Force

### ACM 38609

### 8 October 2015

Sentence adjudged 22 January 2014 by GCM convened at Pope Army Airfield, North Carolina. Military Judge: Joshua E. Kastenberg (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 50 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Major Thomas J. Alford and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, consistent with his pleas, of 5 charges and 18 specifications involving sodomy with children between the ages of 12 and 16, aggravated sexual abuse of children, abusive sexual contact of a child, indecent liberties with children, possessing and producing child pornography, and providing alcohol to persons under the age of 21, in violation of Articles 120, 125, and 134, UCMJ, 10 U.S.C. §§ 920, 925, 934. The court sentenced Appellant to a dishonorable discharge, confinement for 50 years, forfeiture of

all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.

Before us, Appellant argues: (1) the pretrial agreement in his case offends notions of fundamental fairness because it provided him no benefit, (2) his trial defense counsel provided ineffective assistance in advising him to enter into this pretrial agreement, (3) the military judge abused his discretion in denying his speedy trial motion, and (4) his sentence was inappropriately severe.[1] Finding no error prejudicial to the substantial rights of Appellant, we affirm.

*Background*

From June 2003 to March 2011, Appellant was assigned to Pope Air Force Base, North Carolina. While stationed there, he became a volunteer in the Find-a-Friend program, an organization whose members mentor at-risk adolescents. From 2008 to 2010, he abused three boys in the Find-a-Friend program, as detailed below.

In the beginning of 2008, Appellant became mentor to a boy who was then 12 years old. Their association lasted until August of 2008, during which time Appellant touched the boy's penis, masturbated him, and performed oral sodomy upon him. Appellant also photographed himself performing oral sodomy on the boy and took about 21 pictures of the boy in the nude and masturbating—which Appellant then stored on his computer.

In August 2009, Appellant became the Find-a-Friend program mentor for another boy, then 13 years old, and remained his mentor until April 2010. During this period, Appellant provided the boy with alcohol on three or four occasions and exposed him to pornography multiple times. He orally sodomized the boy from two to six times. He touched the boy's penis about a dozen times and gave him about six massages designed to appeal to the boy's sexual desires. Appellant produced and maintained on his computer about 12 pornographic images and 1 pornographic video of the boy.

From about September 2010 to March 2011, Appellant was the Find-a-Friend mentor for a third boy, who was then 13 years old. Around November 2011, Appellant shaved the boy's groin, and then performed oral sodomy upon him. He thereafter orally sodomized the boy repeatedly.[2] Intending to appeal to the child's sexual desires, Appellant showed him pornographic images and videos "on a regular basis." On multiple occasions, Appellant provided alcohol to the boy. He produced and stored on his computer at least 45 pornographic images and 4 pornographic videos showing the appellant performing oral sodomy on the boy and touching his genitalia.

---

[1] The sentence severity issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A 1982).
[2] In his testimony at sentencing, the child estimated Appellant orally sodomized him 40–45 times.

In total, Appellant produced at least 78 child pornography pictures and 5 child pornography videos of his 3 Find-a-Friend victims. Appellant also used peer-to-peer networks and the Internet to obtain other child pornography. Between August 2008 and August 2012, Appellant deliberately downloaded onto his computer and other media devices thousands of images of sexually explicit conduct involving children.

*Validity of Pretrial Agreement*

The pretrial agreement in this case consisted of an "Offer for Pretrial Agreement" without the appendix or quantum portion typically included with such an agreement. Appellant agreed, inter alia, to plead guilty to 18 of the 20 specifications referred to trial, to be tried by military judge alone, and to waive "all waivable motions not already filed." In return, the convening authority agreed to withdraw two specifications which alleged Appellant took indecent liberties with a child and committed sodomy with a child under 12 years of age.[3] The convening authority also allowed Appellant to preserve for appeal any motions filed prior to signing of the pretrial agreement.[4] The pretrial agreement provided no cap on the punishment Appellant could receive at his court-martial.

Appellant now argues before us that his sentence should be reduced, contending his "pretrial agreement offends basic notions of fundamental fairness because he received no meaningful benefit from his pretrial agreement."[5] We disagree.

"The interpretation of a pretrial agreement is a question of law, which is reviewed under a de novo standard." *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999). Pretrial agreements are governed by Rule for Courts-Martial (R.C.M.) 705, which identifies prohibited and permissible terms and conditions. A sentence limitation is not a required part of a pretrial agreement. *See* R.C.M. 705(b)(2)(E) (indicating a pretrial agreement *may* include a convening authority's agreement to take specific action on the sentence adjudged at a court-martial); *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (noting a pretrial agreement creates a constitutional contract between the accused

---

[3] The indecent liberties specification alleged Appellant showed pornographic images to a fourth child who was under the age of 16. The sodomy specification alleged Appellant engaged in sodomy with one of the three child victims when he was under the age of 12.

[4] The provision stated that Appellant preserved for appellate review the following motions:
1. Defense Motion for Appropriate Relief: Release from Pretrial Confinement and Credit for Time Served in Pretrial Confinement dated 17 September 2013
2. Defense Motion to Dismiss for Denial of Right to Speedy Trial dated 16 September 2013
3. Defense Motion to Compel Access to Computer Data dated 23 October 2013
4. Defense Motion to Compel Production of Mental Health Records dated 11 September 2013
5. Defense Motion to Compel Expert Consultant in the Field of Mitigation dated 20 September 2013
6. Defense Motion to Dismiss for Unlawful Command Influence dated 27 September 2013

[5] Appellant expressly states he is "*not* requesting his convictions be set aside" and is not challenging the providence of his guilty pleas. (Emphasis added). Rather, he urges that, "on account of the fundamentally unfair PTA . . . [his] sentence should be reduced to thirty-five years."

and the convening authority wherein the accused agrees to waive constitutional rights "in exchange for a reduction in sentence *or other benefit*") (emphasis added).

Appellant argues the benefit he received under the pretrial agreement was "de minimus at best" and therefore he is entitled to sentence relief in the form of a 15-year reduction in his sentence. We disagree with the premise that he did not receive a benefit from this pretrial agreement. The specification of indecent liberties with a child, dismissed pursuant to the pretrial agreement, carried possible confinement of 15 years, and it also involved an alleged fourth child victim. The dismissed sodomy specification carried possible confinement of life without eligibility for parole. *Manual for Courts-Martial, United States*, Part IV, ¶ 51.e.(3) (2012 ed.). The specifications at issue were properly referred to trial based upon evidence before the convening authority. Appellant's arguments notwithstanding, we are convinced the dismissal of those specifications was a meaningful benefit to Appellant—both in terms of reducing the potential confinement[6] and in removing from the court's consideration evidence of a fourth victim.

We have also considered and reject Appellant's claim that the pretrial agreement violated notions of fundamental fairness or public policy. *See United States v. Riley*, 72 M.J. 115, 120 (C.A.A.F. 2013) (holding that the terms of pretrial agreements must comply with statutory and decisional law and adhere to basic notions of fundamental fairness); *United States v. Holland*, 1 M.J. 58, 60 (C.M.A. 1975) (holding a pretrial agreement that denies the accused a fair hearing or otherwise "substitutes the agreement for the trial, [thereby] render[ing it] an empty ritual" violates public policy). Having carefully examined the pretrial agreement, we find that it contained no impermissible terms or conditions. *See* R.C.M. 705(c)(1) (containing a non-exhaustive list of terms and conditions prohibited in a pretrial agreement). The military judge properly ensured that Appellant understood the pretrial agreement and had freely and voluntarily entered into it. *See Smead*, 68 M.J. at 59; Article 45(a), UCMJ, 10 U.S.C. § 845(a); R.C.M. 705; R.C.M. 910(f), (h)(2), and (h)(3). Appellant had no right to a pretrial agreement at all, nor to a sentence cap or any other promise by the convening authority. *See United States v. Helweg*, 32 M.J. 129, 134 (C.M.A. 1991). The decision whether to join Appellant in a pretrial agreement, or whether to agree to limit his punitive exposure, was within the sole discretion of the convening authority. R.C.M. 705(d)(3). Knowing the terms of the pretrial agreement and that there was no cap on his sentence, Appellant voluntarily elected to plead guilty.

We find the terms of the pretrial agreement did not deny Appellant a fair hearing, nor otherwise render the trial an empty ritual. We find also that the military judge

---

[6] The parties agreed that—based upon Appellant's guilty plea—the maximum authorized punishment was a dishonorable discharge, confinement for 290 years and 90 days, forfeiture of all pay and allowances, and reduction to E-1.

properly ensured that Appellant understood the PTA and agreed to its terms. Accordingly, we reject this assignment of error.

*Effectiveness of Counsel*

Appellant argues he received ineffective assistance of counsel when his trial defense counsel advised him to enter a pretrial agreement that provided him no benefit. As noted above, we do not agree that his pretrial agreement provided Appellant no benefit. We also dismiss his related claim that his counsel were ineffective.

The Sixth Amendment[7] guarantees the accused the "right to the effective assistance of counsel." *United States v. Cronic*, 466 U.S. 648, 654 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)) (internal quotation marks omitted). We review such claims de novo under the standards and two-prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009); *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) this deficiency resulted in prejudice." *Green*, 68 M.J. at 361.

In the guilty plea context, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (brackets and internal quotation marks omitted). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Id.* at 16–17 (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)). Appellant must satisfy an objective inquiry—he must show that if he had been advised properly, then it would have been rational for him not to plead guilty. *Id.* at 17. Here, Appellant has not met his burden.

Pretrial agreements have been called a "constitutional contract" between the accused and the convening authority. *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009). In the contractual agreement at issue here, Appellant found himself in a weak bargaining position by virtue of his predatory molestation of three different boys, his possession of thousands of images of child pornography, and overwhelming evidence against him. He candidly concedes that he intended to plead guilty even without a pretrial agreement, and it is plain from the record that Appellant's trial defense counsel

---

[7] U.S. Const. amend. VI.

encouraged a pretrial agreement in order to obtain for their client what benefit they could under the circumstances.

Appellant has not demonstrated a reasonable probability he would have pled not guilty but for erroneous advice of his counsel. He has shown neither that his counsel's performance was deficient, nor that this deficiency resulted in prejudice. We find therefore that Appellant was not denied his right to the effective assistance of counsel.

*Article 10 Speedy Trial*

At trial, Appellant filed a motion to dismiss all charges and specifications on grounds the Government had violated his right to a speedy trial under R.C.M. 707(d); Article 10, UCMJ, 10 U.S.C. § 810; and the Fifth and Sixth Amendments to the United States Constitution. The military judge denied this motion. Before us, Appellant renews that portion of his claim relating to Article 10, UCMJ.

"Article 10, UCMJ, ensures a servicemember's right to a speedy trial by providing that upon 'arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.'" *United States v. Cossio*, 64 M.J. 254, 255 (C.A.A.F. 2007) (quoting Article 10, UCMJ). Violation of an appellant's speedy trial rights under Article 10, UCMJ, is a question of law which we review de novo; however, we are bound by the facts found by the military judge unless they are clearly erroneous. *Id.* at 256; *United States v. Wilson*, 72 M.J. 347, 350 (C.A.A.F. 2013).

A. *Findings of Fact*

Based upon evidence from both parties, the military judge made detailed findings of fact. His findings are not clearly erroneous and can be summarized in pertinent part as follows:

On or about 22 June 2012, the Air Force Office of Special Investigations (AFOSI) at Pope Army Air Field learned Appellant may have sexually abused a certain juvenile. By this time, Appellant had transferred to Malmstrom Air Force Base, Montana. Based on this allegation, Appellant's commander ordered him restricted to the base on 12 July 2012. On 30 August 2012, his commander ordered him into pretrial confinement, where he remained until his trial.

As the AFOSI began to investigate the allegations made by the first juvenile to come forward, they learned Appellant had participated in the Find-a-Friend Program, in Fayetteville, North Carolina, and that he had a history of volunteering in other youth activities. This led the AFOSI to expand the investigation to include other potential victims. Meanwhile, the AFOSI seized electronic media belonging to Appellant and sent them to a forensics laboratory for analysis. This analysis—which began in October 2012,

and took more than five months to complete—involved over 300,000 pictures, of which the AFOSI believed 90,000 could constitute child pornography.

On 7 June 2013, Appellant's commander preferred against Appellant three charges containing 15 specifications. On 16 July 2013, his commander preferred three additional charges containing four specifications. The pretrial investigation pursuant to Article 32, UCMJ, 10 U.S.C. § 832, was conducted from 25 to 26 June 2013. Appellant was arraigned on 8 October 2013—the elapsed time from his entry into pretrial confinement until his arraignment was 410 days[8].

Further facts pertinent to this issue are discussed below.

*B. Article 10 Analysis*

The right to a speedy trial is a fundamental constitutional right under Article 10, UCMJ, imposing on the military prosecution a more stringent standard than that required by the Sixth Amendment.[9] *Wilson*, 72 M.J. at 350–51; *United States v. Kossman*, 38 M.J. 258, 259 (C.M.A. 1993).

"The standard of diligence under which we review claims of a denial of speedy trial under Article 10[, UCMJ,] 'is not constant motion, but reasonable diligence in bringing the charges to trial.'" *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (quoting *United States v. Tibbs*, 35 C.M.R. 322, 325 (C.M.A. 1965)). "Short periods of inactivity are not fatal to an otherwise active prosecution." *Id.* "Our framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Wilson*, 72 M.J. at 351 (quoting *Mizgala*, 61 M.J. at 129) (brackets and internal quotations omitted). The first factor is to some extent a triggering mechanism. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Cossio*, 64 M.J. at 257.

We find that the 400-plus days from Appellant's entry into pretrial confinement until his arraignment is sufficient to trigger the full *Barker* analysis and therefore analyze the remaining three factors.

The reasons for the delay. The delay in bringing Appellant to trial is significant. We find it, however, justified. To its credit, the Government maintained and introduced at trial a comprehensive, 27-page "Article 10 Log"—with hundreds of entries pertaining to case developments and progress, along with several hundred pages of supporting documentation. These and other matters in the record demonstrate that this was an

---

[8] The military judge calculated the elapsed time to be 410 days, and both parties concurred. We calculate the elapsed time to be 404 days. This difference of six days is immaterial to our decision in this case.
[9] U.S. CONST. amend. VI.

extraordinarily complex case. Appellant had an extensive history of volunteering with schools and other youth organizations. The investigation involved multiple government agencies across the country. It included an expanding list of possible victims, and roughly 150 potential witnesses both within and outside the United States. The pornography aspect of this case alone required forensic examination of several media devices and, as noted above, approximately 300,000 images—90,000 of which were identified as suspected child pornography. From the record we find the Government not only met the standard of reasonable diligence, but indeed achieved nearly constant motion in bringing the charges to trial.

Demand for speedy trial. From 6 August 2012 until 6 June 2013—while the Government was investigating and developing the case against him—Appellant made six requests for speedy trial. However, once charges were preferred and the Government was ready to proceed, Appellant's interest in a speedy trial appears to have waned. As of late July 2013, the Air Force Central Docketing Office was seeking to establish a trial date as soon as possible—yet Appellant's counsel were now declaring the defense could not go to trial any time in the remainder of 2013, and in fact preferred a trial date in February 2014. Under these circumstances, we afford only modest weight to Appellant's demand for speedy trial. *See United States v. Kossman*, 38 M.J. 258, 262 (C.M.A. 1993) ("Stratagems such as demanding a speedy trial now, when the defense knows the Government cannot possibly proceed, only to seek a continuance later, when the Government is ready, may belie the genuineness of the initial request.")

Prejudice to Appellant. Before us, Appellant adopts the arguments he presented at trial in his speedy trial motion. There he argued that: (1) delay caused him "anxiety and concern," and (2) his defense was impaired because a potential witness—Mr. TM—died while his case was pending. Beyond his general claim of anxiety and concern, however, Appellant presents no evidence, nor even argument, as to how his condition might have exceeded the norm. *See Wilson*, 72 M.J. at 354 (In evaluating the prejudice factor, "we are concerned not with the normal anxiety and concern experienced by an individual in pretrial confinement, but rather with some degree of particularized anxiety and concern greater than [that]."). Likewise, Appellant has not shown how Mr. TM's testimony could have aided the defense. Indeed, evidence in the record suggests the contrary—namely, that Mr. TM had a falling out with Appellant after personally observing child pornography on Appellant's computer.

We weigh all the factors collectively before deciding whether an appellant's right to a speedy trial has been violated. *Id.* at 355. Based on the findings of fact and after our de novo review of the Article 10, UCMJ, factors, we conclude that Appellant's right to a speedy trial was not violated.

*Sentence Appropriateness*

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A 1982), Appellant argues that his confinement for fifty years is inappropriately severe when compared to closely related cases.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In exercising sentence appropriateness review, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that any cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets his or her burden to demonstrate closely related cases involve highly disparate sentences, the government "must show that there is a rational basis for the disparity." *Id.*

Appellant cites four sexual assault cases where convictions resulted in sentences to confinement much shorter than the fifty years approved in his case. Appellant has not demonstrated, however, that any of these cases are closely related to his own. We therefore decline to engage in a sentence comparison. Also, we have given individualized consideration to this particular appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial. We find the approved sentence was clearly within the discretion of the convening authority, was appropriate in this case, and was not inappropriately severe.

ACM 38609

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED.**

FOR THE COURT

STEVEN LUCAS
Clerk of the Court